BENSON WOOD *et al.*

*v.*

JESSE R. SURRELLS.

</div>

89   107
40a 271

1. BILL OF EXCHANGE—*what necessary to fix liability of drawer.* The liability of a drawer of an inland bill of exchange is fixed by presenting the draft on the day of its maturity, and notice of its dishonor. The holder of a protested bill or draft is not bound to prosecute the acceptor to insolvency before he can resort to the drawer for payment. Our statute relating to suits against the assignor of promissory notes, has *no application to bills or drafts*, which are governed by the commercial law.

2. PAROL EVIDENCE—*to vary written contract.* The rule is familiar, that an agreement can not exist partly in writing and partly in parol, or, that verbal terms or conditions can not control the rights or legal liabilities of parties to commercial paper.

3. Where one of several judgment debtors gave a bill of exchange on a third person, whose acceptance was procured in satisfaction of the judgment, it was

*held,* that evidence of a parol agreement at the time of the drawing of the bill, to release the drawer from all liability on the draft, was inadmissible.

APPEAL from the Circuit Court of Effingham county; the Hon. JAMES C. ALLEN, Judge, presiding.

Mr. WILLIAM B. COOPER, for the appellants.

Messrs. GILMORE & RINEHART, and Mr. HIRAM B. DECIUS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that on the 18th day of December, 1875, D. M. Osborn & Co. held a judgment against Caldwell, Batty and appellee, upon which execution had been issued, and levied on the property of Batty, which was advertised for sale on that day. Virgil Wood proposed to appellee that if he would give a draft accepted by Habing for the amount of the execution, he would release him and Batty, and satisfy the judgment. Appellee thereupon agreed to draw his draft on Habing for the amount, at ninety days, in favor of Wood Brothers. It was drawn, and accepted by Habing, and the judgment satisfied. At maturity the draft was presented for payment, which was refused. On the same day appellee was notified of its dishonor, and he requested that no costs be incurred until he could investigate the matter. Habing had, nearly a month previously, failed in business. His place of business, goods and property were in the custody of the sheriff, on attachments, one of which had been sued out by appellee. There was testimony, on the trial, that he was, at the maturity of the draft, and had ever since been, insolvent, and legal proceedings would have been unavailing. The bill has never been paid.

Appellee, on the trial in the court below, called witnesses, who testified that they understood that before and at the time the draft was executed it was understood that its execution, and acceptance by Habing, was to release appellee and Batty

from liability.   The court found for defendant, and rendered a judgment in bar of the action, from which plaintiffs appeal.

The evidence in this case shows that the law regulating the liability of parties to inland bills of exchange was complied with by the holder.   The bill was properly presented and accepted, and was on the day of maturity presented for payment, and when payment was refused, notice was on the same day duly given to the drawer.   His liability was thus fixed and complete under the law.   *Bickford* v. *First National Bank of Chicago*, 42 Ill. 238; *Rounds* v. *Smith*, id. 245.   The drawer's liability, then, became fixed by presenting the draft on the day of its maturity and the notice of its dishonor.

Even if a verbal agreement, before or at the time the draft was given, that the drawer should not be liable in case it was not paid, could be set up as a defense, still the evidence falls far short of proving such an agreement.   It clearly shows that all parties were to be released from all liability on the judgment for the payment of which the draft was given.   But it does not appear that anything was said in reference to appellee not being liable on the non-payment of the draft. It is true appellee and Batty say that was their understanding, but give no statements that were made, from which such an inference can be drawn.   And Nuxall, a disinterested witness, who was present, understood the judgment was to be released and neither appellee nor Batty was to be liable on it.   He did not understand that appellee was not to be liable on the draft. We presume all parties regarded Habing as good, and it is not reasonable to suppose it occurred to any one that it was necessary to contract in reference to liability in case of his failure.   And appellee and Batty do not say there was any such expressed agreement, or that Wood said or did anything from which it can be inferred that he so understood the transaction.   But even if there had been such a verbal agreement, it could not avail.   This is virtually conceded in argument. The rule is familiar, that an agreement can not exist part in writing and part in parol, or that verbal terms or con-

ditions can control the rights or legal liabilities of parties to commercial paper.

Nor is the holder of a protested bill or draft bound to prosecute the acceptor to insolvency before he can resort to the drawer for payment. Our statute in respect to fixing the liability of an assignor of a promissory note, has no application to bills of exchange.

The cases of the *Peoria and Oquawka Railroad Company* v. *Neill*, 16 Ill. 269, and *Nowak* v. *Stone Company*, 78 id. 307, are decisive of this question. The statute has in this respect made no change in the commercial law, which only requires due presentation, protest and notice to fix the liability of the drawer and indorser of bills of exchange.

The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*