ERNEST YAGER AND ARTHUR YAGER, DOING BUSINESS
    AS THE BANK OF LEESBURG, NOT INCORPORATED,
    PLAINTIFFS IN ERROR, VS. C. B. McCORMACK, DE-
    FENDANT IN ERROR.

1. Where an exception is general to the refusal to give several
   instructions asserting distinct propositions of law, an appellate
   court will examine them no further than to ascertain that some
   one of them was incorrect and therefore properly refused.
2. The liability assumed by the drawing of a bill of exchange is
   clearly recognized by the law; the mere act of drawing such
   a bill importing the most certain and precise contract for pre-
   sumed adequate consideration that the bill shall be accepted
   and paid, and that if it is not the drawer will pay it.
3. Evidence examined and held insufficient to support the verdict.

Writ of error to the Circuit Court for Lake county.

The facts in the case are stated in the opinion of the
court.

*Anderson & Hocker*, for Plaintiffs in Error.

*Jno. L. Doggett*, for Defendant in Error.

CARTER, J.:

On August 24, 1892, defendant in error began an
action of assumpsit against plaintiffs in error in the Cir-
cuit Court of Lake county, the declaration filed same
day containing only common counts for goods sold and
delivered, work done and materials provided, money
lent, money paid, money received and account stated,
Defendants' plea alleged that they were not indebted to
plaintiff as alleged in the declaration in any amount
whatever, but that plaintiff was indebted to defendants
in the sum of $286 for a draft cashed by defendants for

plaintiff on April 1, 1891, and for the sum of $1.65 protest fees paid thereon, and for interest on said amounts from April 1, 1891, until paid, at the legal rate, except that plaintiff was entitled to a credit thereon of $206.10 paid April 14, 1891, leaving a balance still due defendants of $81.55 and interest, for which latter sum they demanded judgment. Plaintiff "joined issue" on this plea, and the cause proceeded to trial, resulting in a verdict for plaintiff, upon which judgment was entered in his favor for $239.30 and costs. Defendants moved for a new trial, alleging, among other grounds, that the verdict was contrary to the evidence. The motion being overruled, defendants excepted and sued out the present writ of error from the judgment entered against them.

It appears from the evidence that plaintiff during the Spring of 1891 was engaged in buying and selling cabbages in Florida, as a broker, and on March 20th of that year George Davies of Cleveland, Ohio, wired him: "Will advance $1.00 crate and brokerage, three cars week commencing immediately," and on the same day wrote him quoting and confirming the telegram. On March 23rd, Davies wired him: "Cabbage market improving, have wired money to Bank of Leesburg," and on the same day wrote the defendants: "We had our bank wire you, 'will honor draft on George Davies, three cars per week, dollar ten per crate, bill lading attached, through C. B. McCormack.' Please consider this good until order otherwise;" and on the same day the German-American Savings Bank Co. of Cleveland, Ohio, wired defendants: "Will honor draft on George Davies three cars cabbage per week, dollar ten per crate, bill of lading attached, through C. B. McCormack." In pursuance of the arrangement between Davies and plaintiff the defendants being aware of

plaintiff's instructions, plaintiff bought and shipped several cars of cabbages, drawing on Davies through defendants in pursuance of the instructions, the drafts being cashed by defendants and proceeds placed to plaintiff's credit. The first car was shipped on March 24th, and a fourth car on March 27th; and for the last car a bill of exchange was drawn with bill of lading attached, which was cashed by defendants and proceeds placed to plaintiff's credit. This bill reads as follows: "On demand pay to the order of Bank of Leesburg two hundred eighty-six and no-100 dollars, value received and charge the same to account of C. B. McCormack. To George Davies, Cleveland, Ohio."

The bill was duly presented and protested for nonpayment and thereupon defendants charged the amount of same to plaintiff's account, and notified him of this action. The previous bills were duly paid, but the fourth was not paid by Davies because, as he claimed, it was drawn for a fourth car shipped within a week, contrary to instructions. Nevertheless he received the fourth car of cabbages, sold it in the same manner as the three previous ones and accounted to the owners for same.

Plaintiff testified that by his instructions from Davies he became the latter's agent, and was so recognized by defendants, and that the fourth bill of exchange was cashed and proceeds credited to his account by them on the same basis as the three previous ones; the fourth, according to his testimony, having been cashed on March 30th. The defendants' cashier testified that the fourth bill was presented, cashed and proceeds placed to plaintiff's credit on April 1st; that when plaintiff presented it witness told him that he had exceeded his instructions; that the bill was drawn for a fourth car shipped during one week; that it would not be paid; that plaintiff stated he was sure the bill would

be paid, and if it should not be he would make it good to defendants; that witness then stated to plaintiff if he would guaranty payment of the bill and would make it good to defendants if not paid in Cleveland, he would cash it; that plaintiff agreed to do this and then and there guaranteed payment of same. When the bill was charged back to plaintiff it left his account overdrawn $81.55. Plaintiff denied that he ever stated to defendants' cashier that he would guaranty payment of the fourth bill, or that he would make it good to defendants if it was not paid, and stated that he had no recollection of any such conversation between himself and the cashier as testified to by the latter; and he further testified that according to the business customs of defendants, neither he nor any other person could have secured credit for the amount of the bill on their simple personal guaranty. Defendants' cashier testified that in cashing the first three bills he relied upon the acceptance of the German-American Savings Bank Co., but in cashing the fourth or last one he relied upon the guaranty of plaintiff. It appears from the evidence that the German-American Savings Bank Co. telegraphed defendants on March 31st: "Pay no more drafts on Geo. Davies until further advices."

Defendants requested five instructions, to the refusal of which a general exception was taken. No objections are made as to the sufficiency of the replication to defendants' plea of set off, but upon remand of the case it may be well for the parties to consider whether this replication is applicable to a plea of set off, so as to make an issue proper to be submitted to a jury.

I. The defendants' refused instructions asserted five distinct propositions of law, and we find that some of these propositions were incorrect. The exception being general, we examine them no further than to ascer-

tain that some one of them was incorrect, and, there-
fore, properly refused.

II. The court erred in overruling the motion for a
new trial. The bill drawn by plaintiff, upon its face,
purported to be his individual bill, and "the liability as-
sumed by the drawing of a bill of exchange is clearly
recognized by the law. The mere act of drawing a bill
imports the most certain and precise contract, for pre-
sumed adequate consideration; that the bill shall be ac-
cepted and paid and that if it is not, the drawer will pay
it." Cummings v. Kent, 44 Ohio St. 92, 4 N. E. Rep.
710; Wood v. Surrells, 89 Ill. 107; Martin v. Lewis, 30
Gratt. (Va.), 672, S. C. 32 Am. Rep. 682; Abrey v.
Crux.L.R.5 C.P.Cas.37. The written bill, upon its face,
purporting to impose a personal liability upon plaintiff
in the event it was not paid by Davies, the burden of
proof was upon him to show that in fact he was not to
be liable as drawer. He did not claim that there was
any express understanding between him and the de-
fendants, that he was not to be liable on any of the bills
drawn by him, nor that there was any express under-
standing between him and his alleged principal or the
defendants that the bills to be drawn by him were to
be considered the bills of his principal, nor did he sign
the bill as an agent, or purport thereby to bind only his
principal. If we assume that plaintiff was merely an
agent for Davies, he certainly did not sign the bill as
agent, or otherwise indicate an intention not to bind
himself personally by his signature to the same. Evi-
dence that defendants in cashing the first three bills re-
lied upon the acceptance of the Cleveland bank, and
that according to their business customs plaintiff could
not upon his simple personal guaranty have secured
credit with them for the amount of either of the bills,
does not prove an agreement or understanding between

the parties that the legal liability assumed by plaintiff by the act of drawing the bill was to be released. The defendants claimed that they knew the last bill was drawn contrary to instructions, and that they cashed it, not upon the credit of the Cleveland bank, but upon plaintiff's express guaranty. If this be true, then plaintiff would clearly be liable. If it be untrue, and as testified by plaintiff no special guaranty was ever made by him, and no conversation between him and defendants' cashier ever took place as testified by the latter, then he is liable as drawer of the bill, because he does not pretend that there was ever any agreement to release him, or that he, though the drawer, was not to be liable. So even though he was merely an agent for Davies and drew the bill for a car shipped according to instructions, he had a perfect right to bind himself personally, and he did enter into an engagement which purported to so bind him, and in order to absolve him it devolved upon him to show that though apparently personally bound, he in fact was not to be so bound. Leadbitter v. Farrow, 5 Maule & Sel. 345. He nowhere states that he was not to be personally bound, nor does he even state that he did not intend to bind himself by the drawing of the bills, and there is certainly nothing in the letters and telegrams, or in the course of dealing between the parties, to change the plain legal effect of the instrument drawn by him.

Giving full effect to all the evidence before the jury, we think it was insufficient to support the verdict. It may be that some of the testimony was inadmissible because tending by parol to vary and contradict the terms of the written bill of exchange, but as no objections were interposed to any evidence offered in the court below, we do not feel called upon to determine that question at this time.

The judgment of the Circuit Court is reversed and a new trial granted.