WILLIAM F. ATKINSON v. PAUL WEIDNER ET AL.

*Chattel mortgages—Fraudulent preferences—Bills and notes—Evidence—Garnishment.*

1. Mortgages executed by a debtor to a trustee for the benefit of certain specified creditors, and which are evidently an assignment of *all* of his property with intent to prefer the beneficiaries, are void as to the *unsecured* creditors. *Kendall v. Bishop,* 76 Mich. 634.[1]

2. A payee, while retaining the possession of a note which he has indorsed in blank, has the right to bring suit thereon in his own name. *Kerrick v. Stevens,* 58 Mich. 297.

3. Judgment creditors of the payee in a note, in whom the legal title is vested by a blank indorsement and delivery, and by his agreement to apply its proceeds, when collected, upon the judgment, have the right to allow him to bring suit in his own name on the note.

4. A debtor mortgaged *all* of his property to a trustee for the benefit of certain specified creditors, it being verbally understood that the trustee was to take possession of and sell the property, and distribute the proceeds *pro rata* among the beneficiaries. After taking possession and commencing such sale, a portion of the property was sold by the trustee to four of the beneficiaries at an appraised value, who gave him their promissory note in payment, payable to his order. Before the execution of this note and the delivery of the property the trustee was garnished at the suit of certain *unsecured* creditors in the United States court, who recovered a special verdict, reciting

---

[1] See *Gore v. Ray,* 73 Mich. 385.

the trustee's possession of the property so sold at the time of the service of the garnishee process, and that it was *then* the property of the mortgagor and principal defendant. A judgment was entered upon the verdict, ordering the trustee to turn over *this* property to the United States marshal, and upon his refusal to do so the court ordered an execution to be issued against the trustee's estate, under the statute. The trustee thereupon indorsed the note received on said sale to the judgment creditors in blank, and delivered it to them, receiving a receipt for the note, which was to apply, when collected, on the judgment; it being agreed that the judgment creditors were to use their utmost endeavors to collect the note, and that proceedings upon the execution should be stayed until all reasonable means for such collection were exhausted. The trustee brought suit on the note in his own name by consent of the judgment creditors, and on the trial the foregoing facts appeared, and a verdict was directed for the defendants, on the ground that the trustee could not collect the note in *full* from them, and appropriate the proceeds to the payment of the garnishee judgment; on reversing which it is held that the judgment was in substance one against the identical property sold the defendants, which was not transferred to them until after the writ of garnishment was served, and had, as it were, taken hold of said property, which was a sufficient consideration for the note, and that upon the facts stated a verdict should have been directed for the plaintiff.

5. Where certain of the beneficiaries named in a trust mortgage purchased a portion of the mortgaged goods, and gave the trustee their promissory note for the purchase price, they cannot show, as a defense in a suit upon the note, an oral contemporaneous understanding with the trustee that it was anticipated that the remaining goods would produce enough to pay the other beneficiaries in full, and, if so, payment of the note was not to be enforced, but, if there was a deficiency, defendants were to pay enough on the note to enable the trustee to make a *pro rata* payment to the other beneficiaries.

Error to Wayne.    (Brevoort, J.)    Argued January 31, 1890.    Decided February 20, 1890.

*Assumpsit.*    Plaintiff brings error.    Reversed.    The facts are stated in the opinion.

*Charles M. Swift,* for appellant, contended:

1. There being no dispute but that the defendants executed the note, evidence of a contemporaneous oral understanding contradicting its terms was incompetent and irrelevant; citing *Hyde v. Tenwinkel*, 26 Mich. 93; *Cline v. Hubbard*, 31 Id. 237; *Bank v. Bennett*, 33 Id. 520; *McEwan v. Ortman*, 34 Id. 325; *Oliver v, Shoemaker*, 35 Id. 464; *Johnson v. Sutherland*, 39 Id. 579; *Coon v. Spaulding*, 47 Id. 162; *Baker v. Morehouse*, 48 Id. 334; *Brewster v. Potruff*, 55 Id. 129; *Walsh v. Martin*, 69 Id. 29; *Kulenkamp v. Groff*, 71 Id. 675.

*H. L. Chipman* and *William Look* (*Edwin F. Conely*, of counsel), for defendants, contended as stated in the opinion, citing no authorities.

MORSE, J. Plaintiff sued in the Wayne circuit court upon a promissory note of which the following is a copy:

"DETROIT, December 12, 1884.

"On demand, we jointly promise to pay to W. F. Atkinson or order six thousand one hundred and thirty-six dollars and fifty-eight cents. Value received.

"$6,136.58.                ADOLPH HOFFMAN.
                           "CATHERINE HOFFMAN.
                           "PAUL WEIDNER.
                           "GUSTAV FETTERS."

The defenses claimed on the trial were:

1. That defendants did not understand that the paper signed by them was a promissory note.

2. That there was a contemporaneous parol agreement that the note should not be payable according to its terms.

3. That there was a trust created; and, in view of such trust, which will be outlined hereafter, defendants' liability upon this note can only be ascertained and fixed in equity by an accounting.

4. That, if Atkinson can collect this note at all, he can do so only for the purposes of this trust, in the discharge of which the defendants ought to receive part of the proceeds of the note; but that such note has been assigned by Atkinson to Booss & Co., and will not be used for trust purposes, and therefore defendants ought not to be compelled to pay it.

The circuit judge, Hon. Henry N. Brevoort, directed a verdict for the defendants, and they had judgment.

There is not much dispute about the facts, which appear to be as follows: Gustav Heine was a dealer in furs in Detroit, and on December 2, 1884, executed a chattel mortgage upon this stock to the plaintiff, who had been his attorney, as trustee for certain creditors, to wit, Paul Weidner, Adolph Hoffman, Catherine Hoffman, Gustav Fetters, Theresa Heine (his wife), Ives & Son, Marie Durnheim, Katie Durnheim, Magdalen Durnheim, and Lena Heine. The indebtedness to be secured was stated to be $18,000. Heine was indebted to the defendants, personally, aggregating $7,063; to Ives & Son, $1,300; to Mary, Kate, and Magdalen Durnheim, aggregating $1,494; to Lena Heine, $500; to his wife, $6,750; to F. Booss & Co., of New York, $5,000; to Heyman & Co., of New York, $2,300; and to other New York creditors about $7,000; making a total indebtedness of about $32,000. This mortgage covered his stock in his stores at Nos. 99 and 101 Jefferson avenue. December 3, 1884, he executed another chattel mortgage to plaintiff, covering the stock in the stores mentioned in the first mortgage, and also in his store at 223 Woodward avenue, and a horse, harness, and wagon. In this mortgage, plaintiff was named as trustee of the same parties as first mortgagees with the exception of Lena Heine, and with Atkinson & Atkinson as additional creditors.

The defendants were notified of the execution of these mortgages; and, at the suggestion of Heine and plaintiff, they turned over and surrendered to the latter their evidences of indebtedness against Heine, consisting of notes. There was an understanding between plaintiff, Heine, and the defendants that Atkinson was to take possession of the property, and sell the same, and distribute the proceeds of such sale *pro rata* among the persons named as

beneficiaries in the mortgages. Plaintiff took possession December 3, 1884, and commenced to sell the goods. The retail value of the entire stock was about $16,000. December 10, 1884, the United States marshal, on behalf of Heyman & Co., attached a part of the furs, which were appraised at $2,500. The sales down to this time had been slow, and the expenses heavy. December 12, 1884, a large quantity of furs were set aside and appraised by Atkinson, Mrs. Heine, and defendant Weidner on the basis of the appraisal made by the appraisers in the attachment suit of Heyman & Co. The value of these goods was fixed at $6,136.58; and they were sold by Atkinson to the four defendants here, who executed the note in suit in payment therefor.

The defendants claim that there was an oral understanding between the parties, contemporaneous with the execution of the note, that it was anticipated that the goods remaining would produce enough to pay the other creditors interested in the trust in full, and, if so, defendants would not be called upon for anything on the note; if, however, the remaining goods in Atkinson's hands did not produce sufficient to pay those interested in the trust in full, defendants, who had bought the goods, would be called upon for enough in cash, so that other creditors named in the mortgages would receive the same ratable proportion of their debts or claims as the defendants; that the goods were then put on a dray by Atkinson, and sent to the house of the defendants Hoffman, where they were stored in an upper room over the saloon.

Atkinson testified that he did say to the defendants that they might not be called upon to pay the whole note; that he would give them credit on the note for their proportion of the total proceeds of the goods which he should sell. But he also said he could not sell any goods to them except exactly as to strangers, and that

the note must be treated as cash in his hands, and that they might be called upon to pay it in full; that, on the examination of the garnishee defendants before the United States commissioner, all of the defendants were present, and that the defendant Weidner then and there testified that the defendants were buyers of the furs, and that the note was the same as commercial paper, and was the same as cash in Atkinson's hands; and that on this examination the plaintiff cross-examined the defendant Weidner in the presence of the other defendants, and drew out from him the distinct admission that this note was the same as cash.

On the same day this transaction took place, Booss & Co., of New York, brought suit in the United States court against Heine, and garnished Atkinson. Judgment in this suit was taken against Heine in March, 1885. The case of Booss & Co. against Atkinson as garnishee was tried three times, finally resulting in a verdict against Atkinson for the amount of their judgment against Heine, and interest. The process in this garnishee suit was served upon Atkinson before the transfer of the furs to the defendants and the taking of this note. Atkinson testifies, on the trial of the case at bar, that the defendants were present at all of the garnishee trials, and heard him there testify that said note was cash in his hands.

While the garnishee proceedings was pending, and on December 13, 1884, the Heine Manufacturing Company was organized. The capital stock was fixed at $10,000, and divided into 400 shares of $25 each, which were allotted as follows: Weidner, 120; Adolph Hoffman, 100; Fetters, 72; Catherine Hoffman, 32; Theresa Heine, 66; and G. Heine, 10, for which he put in his tools. The furs sold to the defendants went into this corporation. It is not shown that Mrs. Heine contributed anything to

the stock. Weidner was secretary and treasurer of the corporation, and attended to its financial management, till April 5, 1885, when he sold out to Fetters, getting enough money out of the concern to pay $500 out of the indebtedness he held against Heine. The same day the Hoffmans assigned their interest in the corporation, through a son-in-law, to Fetters. Fetters and Mrs. Heine then formed a copartnership. Fetters afterwards got out of this copartnership with $500 for his interest.

It is claimed by defendants that all through these transactions with the goods which they received for the note they acted under the advice of Atkinson. They gave evidence tending to show that the balance of the stock was sold by Atkinson, for the proceeds of which sale he had never accounted to the persons named in the mortgages. Atkinson testified that Heine agreed that Atkinson & Atkinson should be paid a compensation of $1,000 for the accepting and carrying out of the said trust by him; that up to December 12, 1884, the sales amounted to $1,845, and the other property sold at auction for $600, from which, deducting his compensation, $1,000, and the necessary expenses, there remained in his hands about $500, for which sum he was ready to account in the proper tribunal. In relation to the sale of the furs to defendants, he says he refused to let them go unless they would sign the note, which he accepted as cash.

It further appeared that the verdict against Atkinson in the United States court was a special one, and recited that the goods transferred to the defendants in this suit were in the possession of Atkinson when the garnishee writ was served, and were at that time the property of Heine; that, in the judgment entered upon said verdict, Atkinson was ordered to turn these goods over to the United States marshal, and upon his refusal to do so the court ordered an execution to be issued against his own

estate, under the statute. On cross-examination, plaintiff testified that this suit upon the note was brought under an arrangement in writing with Booss & Co. Against plaintiff's objection, this writing was put in evidence, from which it appeared that the proceeds of the note, when collected, were to be applied on the Booss & Co. judgment against Atkinson.

The court erred in directing a verdict for the defendants. It is claimed by defendants' counsel, in their argument here, that the circuit judge based his direction upon the ground that Atkinson could not collect this note in full from the defendants, and appropriate its proceeds to the payment of the judgment against him in the garnishment suit of Booss & Co. But it must be remembered that the judgment against Atkinson was in substance a judgment against these identical goods, which were not transferred to defendants until after the writ in garnishment was served, and had, as it were, taken hold of these goods. It was perhaps, and probably, in view of this fact that Atkinson refused to let defendants have these goods until they signed and delivered the note to him, and that he received it as so much cash in payment of these goods. Independently of the garnishee proceedings, the defendants have no more right to these goods than Ives & Son, and the other creditors mentioned in the trust mortgages; and it is plain that they understood that they must either account to Atkinson for the goods, or pay the note. The goods were a sufficient consideration for the note, and they have had the benefit of them; and there is no evidence in the record to support their claim that through the schemes of Atkinson they lost the benefit of the goods.

The parol contract testified to by them could not be received to vary the written contract to pay the money on demand; and, if it could, it would have no bearing,

as the case stood; the goods, by the judgment of the United States court, being taken out from the operation of the trust mortgages, and rightfully so, under the laws of this State, which do not permit all the property of the debtor to be thus transferred, preferring certain creditors, and leaving out others. These mortgages were evidently an assignment of all the Heine's property, with the intent and object of preferring certain creditors at the expense of the others, and therefore void as against Booss &. Co. *Kendall v. Bishop*, 76 Mich. 634 (43 N. W. Rep. 645).. These goods never became part of the trust property; and: the theory of the defendants would compel Atkinson to pay Booss & Co. for these goods, and yet prevent him from recovering their value from them. This would be unjust,. and the law does not require it.

As far as these goods are concerned, Mr. Atkinson has. no accounting to make to the defendants, or any other of the persons mentioned in the mortgages. The fact: that he has not accounted for the proceeds of the other goods sold by him is not material in this suit, and has: nothing to do with defendants' payment of this note.

Atkinson had the right to sue on this note, although he had indorsed it in blank; it still remaining in his. hands. *Kerrick v. Stevens*, 58 Mich. 297 (25 N. W. Rep.. 190). The fact that he had agreed to apply the proceeds. of the note upon the Booss & Co. judgment has no effect. upon his right of action here; and, if it be true that the legal title to the note was, by the written arrangement, in Booss & Co., as claimed by defendants, at the time suit was brought, still they had the right to allow him to collect it by suit in his own name, and it is evident they assented to his doing so. *Hovey v. Sebring*, 24 Mich.. 232.

Upon the facts presented in the court below, verdict:

should have been directed for the plaintiff for the full amount of the note, and interest.

The judgment is reversed, with costs, and a new trial granted.

CHAMPLIN, C. J., CAMPBELL and GRANT, JJ., concurred. LONG, J., did not sit.