NANNIE R. MACOMB, EXECUTRIX, ETC., v. ALBERT H. WILKINSON.

*Mortgage foreclosure—Attorney's fees—Surplus—Bills and notes— Consideration—Principal and agent—Evidence—Day- book entries.*

1. An entry in the handwriting of a deceased party, made in a day-book kept by him in his life-time in the regular course of business, is competent evidence; citing *Price v. Earl of Torrington*, 1 Smith, Lead. Cas. (8 Amer. ed.) 563, and notes.

2. It is always competent to show the consideration for which a promissory note was given unless the rights of a *bona fide* purchaser have intervened.

3. The excess paid by a purchaser at a statutory foreclosure sale above the amount due, by reason of the addition of attorney's fees, belongs to whoever is entitled to the surplus arising on such sale, and cannot be claimed by the purchaser.

4. A principal is chargeable with such facts as are known to his agent.

So *held*, where an attorney at law, having funds to invest for a client, purchased for him a note with knowledge that a portion of the consideration for which it was given consisted of attorney's fees added to the amount claimed to be due on a statutory foreclosure, of which fact the client was ignorant, taking no part in the purchase of the note.

Error to Wayne. (Reilly, J.) Argued November 14, 1890. Decided December 5, 1890.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*E. S. Clarkson*, for appellant, contended:

1. A payment on account is to be applied to the legal, not the illegal, items; citing *Warren v. Chapman*, 105 Mass. 87, 89; *Haynes v. Nice*, 100 Id. 327; *Rohan v. Hanson*, 11 Cush. 44.

2. In support of the alleged illegality of the attorney's fees, counsel cited *Bullock v. Taylor*, 39 Mich. 137; *Van Marter v. McMillan*, Id. 304; *Myer v. Hart*, 40 Id. 517; *Parks v. Allen*, 42 Id. 482; *Vosburgh v. Lay*, 45 Id. 455; *Louder v. Burch*, 47 Id. 109; *Millard v. Truax*, Id. 251; *Botsford v. Botsford*, 49 Id. 29; *Kennedy v. Brown*, 50 Id. 336; *Millard v. Truax*, Id. 343; *Damon v. Deeves*, 62 Id. 465; *Bendey v. Townsend*, 109 U. S. 665; and if the fees were illegal, the whole note was invalidated; citing *Buck v. Bank*, 27 Mich. 293; *Snyder v. Willey*, 33 Id. 483; *Brown v. McHugh*, 36 Id. 433; *Wisner v. Bardwell*, 38 Id. 278.

3. The whole amount of illegal attorney's fees should be deducted from the amount due on the note, as they could have been recovered from the payee in an action for money had and received; citing *Vosberg v. Lay*, 45 Mich. 455; *Kennedy v. Brown*, 50 Id. 336; *Klein v. Bayer*, 81 Id. 233.

4. Book entries are never admissible as evidence until they are regu-

ularly proven; citing 1 Smith, Lead. Cas. (8th Amer. ed.) 570, 571, 573, 575; 1 Greenl. Ev. § 118 (note); and in this case no attempt was made to show that the book, or any entry therein, was reliable or accurate, nor was there any evidence to show when the entries were made, or that it was a book of original entry, or the genuine and only book of account of the deceased. Furthermore, Toms was not a party to the case at bar, and the entries were inadmissible as those of a third person, unless proven to have been made by him and at the time, and that he had no reason for perverting them; citing 1 Greenl. Ev. § 116; nor was it in any sense a shop-book, and hence was inadmissible as a whole or in part.

*A. H. Wilkinson*, in *pro. per.*, for appellant.

*Robert T. Gray*, for plaintiff, contended:

1. Oral evidence is inadmissible to vary the affect of a promissory note; citing *Kulenkamp v. Groff*, 71 Mich. 675.

2. As Baxter bid $200 more than was properly due, the presumption is that he paid the excess to the officer (*Millard v. Truax*, 47 Mich. 251), who is liable to refund it to the rightful owner; and the ownership of such excess is the personal right of the owner, and does not pass with the land; citing *Smith v. Smith*, 13 Mich. 258.

CAHILL, J.   This suit involves the right of the defendant to show that a part of the consideration of a certain note given by him to R. P. Toms in his life-time consisted of illegal attorney's fees charged in the foreclosure of certain mortgages in the hands of Mr. Toms for foreclosure, and to have the amount of such illegal attorney's fees deducted from said note.

In January, 1889, John N. Macomb brought suit in the Wayne circuit against the defendant upon a promissory note, a copy of which appears in the record as follows:

"$1,500.                              DETROIT, November 3, 1876.

"Sixty days after date, I promise to pay to the order of R. P. Toms fifteen hundred dollars at First National Bank, Detroit, value received, with ten per cent. interest.
                                        "A. H. WILKINSON."

The note was indorsed as follows:

"I hereby assign and transfer the within note to John N. Macomb, of Washington, D. C.

"JULIA F. OWEN,

"Administratrix of the Estate of S. Caroline Toms."

In May, 1889, John N. Macomb having died, his death was suggested upon the record, and an order was made allowing his executrix, Nannie R. Macomb, to prosecute the suit.

The defendant pleaded the general issue, accompanied by the following notice:

"Take notice that, upon the trial of said cause, the said defendant will show and give in evidence that Robert P. Toms, the payee named in the note, a copy of which is given in the declaration in this cause, was attorney for one William H. Baxter in the foreclosure of two certain mortgages against one Frederick Schmidt; that this deponent, in order to protect his interest in the land included in said foreclosure, was compelled to give said note, and that said note includes about seven hundred dollars of attorney's and solicitor's fees, which were not authorized by law, and that such fees, and the amount thereof, should be deducted from said note at the date thereof, and the payments credited upon the note, so reduced in amount, as partial payments thereof."

The case came on for trial before the Hon. Cornelius J. Reilly, circuit judge, with a jury. The following facts were admitted on the record:

"1. That Bobert P. Toms died testate, March 10, 1884, bequeathing and devising all his estate to his wife, Sarah Caroline Toms.

"2. That Sarah Caroline Toms died intestate, June 17, 1888, leaving Julia Frances Owen, her sister, as her sole heir.

"3. That Julia F. Owen was duly appointed administratrix of the estate of Sarah Caroline Toms, and qualified as such administratrix."

The plaintiff put in evidence proof of the handwriting of Julia F. Owen, whose assignment of the note to John

N. Macomb appears on the back of said note. Thereupon the note was admitted in evidence. The plaintiff also put in evidence tending to show that the interest had been paid on said note by defendant up to May 3, 1887. Mr. William J. Gray testified on behalf of the plaintiff that the note had come into his hands at the death of Robert P. Toms, by reason of his having been at that time in Mr. Toms' law-office; that he had made demand on the defendant for the payment of the note; that defendant had paid his interest at various times up to May 3, 1887; that he had made demand on him for payment of principal and interest; that defendant had at various times promised to pay principal and interest; that on two or three occasions defendant asked for delay; that witness told him that the note belonged to Col. Macomb, and that the latter was anxious to have his money, and close up matters in Detroit,—he wanted the principal and interest of this note paid; that defendant asked for delay, and promised on one or two occasions, if witness would delay suit, he would pay principal and interest; that, on the strength of defendant's promises to pay, witness delayed suit, and gave defendant more time than he asked for.

Plaintiff also offered in evidence certain entries in what purported to be the day-book kept by R. P. Toms in his life-time, and Mr. Gray was asked the following question:

"*Q.* Will you look at the entry there, Jan. 2, 1877? In whose handwriting is that entry?

"*Mr. Prentis.* I object to that as incompetent and immaterial.

"*Mr. Gray.* I only wish to show this entry in Mr. Toms' writing, showing payment and transfer of this note again to John N. Macomb.

"*Court.* I think I will allow you to show it.

"*Mr. Prentis.* I object to his proving the entries in any book in this way. It is not competent to prove the

entries in a man's day-book in any such manner as this.
"*Court.* Note exception.

"*A.* This entry is in the handwriting of Robert P.
Toms : 'John N. Macomb, debtor, to loan A. H. Wilkin-
son $1,525, by check No. 1,514, $1,525.' That note was
afterwards laid in box belonging to Col. Macomb, and,
after Mr. Toms' death, I informed Judge Wilkinson that
the note belonged to Col. Macomb."

Error is assigned upon the admission of this entry
from Mr. Toms' book. The purpose of it was to show
by additional evidence that the note belonged to Mr.
Macomb. As the proof was already ample on that point,
and was undisputed, the entry in the day-book was
scarcely necessary. But it was competent. The day-
book was authenticated as one kept by Mr. Toms in his
life-time; the entry was one of many made by him in the
regular course of business, and comes within a familiar
rule of evidence. *Price v. Earl of Torrington,* 1 Smith,
Lead. Cas. (8th Amer. ed.) 563, and notes.

By way of defence to the note, it is claimed that it
included six separate attorney's and solicitor's fees,
charged on six separate foreclosures for installments of
interest due on two mortgages given by one Frederick
Schmidt, of Detroit, to William H. Baxter, of Vermont.

Defendant, Mr. Wilkinson, being an attorney at law,
had in his hands for collection a claim against Schmidt,
which he put in judgment, and levied upon the property
covered by the Baxter mortgages. At the time this levy
was made, two foreclosure suits were pending in the
Wayne circuit court, in chancery, to collect installments
of interest due in the fall of 1874 on each of these
mortgages. The defendant claims that to protect his
levy he found it necessary to purchase the premises on
these foreclosure sales, which took place December 9,
1875. The amount for which the premises were sold
included a $100 solicitor's fee in each case, which he was

required to and did pay as the purchaser at such sale.   The property was sold subject to the balance to become due of the principal and interest on the two mortgages.   He claims that he personally advanced the money to make these purchases, expecting that his client would reimburse him, but his client, becoming insolvent, was not able to do so, and he was required personally to take the property to protect himself.

Another installment of interest having fallen due on each mortgage in the spring of 1875, proceedings were commenced to foreclose for such installments by advertisement, and the sales made September 1, 1875; the amount claimed to be due in each case included an attorney's fee of $100, and the property was sold for such amount, Baxter being the purchaser.   This sale was also made subject to the balance that was to fall due on the mortgages.   There was no redemption from these two sales; but in September, 1876, after Baxter's title under the statutory foreclosure had become perfect, he conveyed the titles thereunder to Wilkinson, who paid the full amount of the bids and interest, including the $200 attorney's fees.

The third set of foreclosures, for interest due in the fall of 1875, were also statutory, the sales being held March 31, 1876.   The property was bid in by Baxter for the full amount claimed, including $100 attorney's fees in each case.   Wilkinson, as the owner of the equity of redemption, by arrangement with Mr. Toms, agreed to take the Baxter bids at the March sale, 1876, and on September 1, Mr. Toms sent to Mr. Wilkinson a statement showing the items of the amount claimed to be due at that date to be $1,781.78.   For this amount Wilkinson gave his note to Mr. Toms for 60 days, and Mr. Toms remitted to Baxter the amount of such note, less the $200 attorney's fees and his disbursements.

When that note fell due, to take it up, Wilkinson gave the note in suit for $1,500, and paid the balance of $312.98 in cash.

It is urged by plaintiff's counsel that none of the items of attorney's or solicitor's fees paid by Mr. Wilkinson on these various foreclosures can be by him offered as a defense to this suit. It is said that the $200 paid by him on the first foreclosure suits was as a purchaser, and, if the amount paid by him on such purchase was more than the amount due by reason of including the $200 solicitor's fees at the time, the excess could not be claimed by Wilkinson, but would belong to the person, whoever he might be, who was at that time entitled to any surplus arising from such sale; that the two items of $100, included in the second set of foreclosures, were paid by Mr. Baxter as the purchaser, and, if the sum bid exceeded the amount legally due by the amount of the attorney's fees, such amount remained in the officer's hands as a surplus, and belonged to whoever was entitled at that time to such surplus; citing *Millard v. Truax*, 47 Mich. 251.

So far as the first foreclosures are concerned, it is clear that the solicitor's fees paid by Wilkinson form no part of the note in suit, for the reason urged by plaintiff's counsel. As to the second foreclosure, no redemption was made or offered, and the bids ripened into titles in Baxter. When he conveyed these titles to Wilkinson, the fact that he included the attorney's fees as a part of the consideration demanded for a conveyance is of no importance. He was not bound to convey at all, and, if he did, he had a right to fix his own price. The consideration agreed upon and paid by Wilkinson was $1,108.84.

The last two items of $100 each, which were included in the sale that took place March 31, 1876, were included in the note given on September 1, of which the note in

suit is a renewal. We have now to consider whether defendant is entitled in this suit to have this $200 so included in this note deducted from it as having been included without a legal consideration. No point was made by counsel for plaintiff on the trial, nor is any made here, that there was no legal evidence that such illegal items were included in the note of September 1, of which the note in suit is a renewal. Mr. Wilkinson was allowed, without objection, to testify to this fact, and was cross-examined fully upon the point by plaintiff's counsel. The effort on such cross-examination was directed to showing that the solicitor's and attorney's fees, in all the foreclosure proceedings except the last, had been settled for independently of the note of September 1, and that such note only included the attorney's fees on the last foreclosure. There is an intimation in the charge of the court that defendant's testimony, tending to show that the $200 attorney's fees was included in the note of September 1, was inadmissible, on the ground that it would have allowed defendant to testify to facts which must have been equally within the knowledge of Mr. Toms, who was the payee in the note, and who had since died.

If the testimony was objectionable on that ground, which we are not called upon to decide, it does not appear that the point was made by plaintiff's counsel on the trial, nor is it made here; counsel expressly stating that he prefers to rest his objection to the competency of such evidence upon the ground that it was evidence to contradict a written instrument, and, as such, was inadmissible. Counsel clearly misapprehends the purpose of the evidence. It was not intended to contradict the note, but to show the consideration upon which it rested. This may always be done unless the rights of a *bona fide* holder intervene. It is claimed that Col. Macomb was

such holder. I think not. He never had anything to do personally with the purchase of this note. He had funds in the hands of Mr. Toms for investment, and the latter used a part of such funds to purchase this note, at what exact time it does not appear. Mr. Toms, the agent, knew that the note included the $200 illegal attorney's fees. Col. Macomb, as principal, was chargeable with knowledge of such facts as were known to his agent. *Baker v: Pierson*, 5 Mich. 456; *Emerson v. Atwater*, 7 Id. 12; *Terry v. Tuttle*, 24 Id. 206; *Advertiser & Tribune, Co. v. Detroit*, 43 Id. 116; *Taylor v. Young*, 56 Id. 285; *Morgan v. Railroad Co.*, 57 Id. 431.

Nor is the evidence clear that Mr. Toms transferred the note to Col. Macomb before it fell due. The only evidence to the point is the entry in Mr. Toms' day-book, under date of January 2, 1877, in which the note is charged to Col. Macomb as of that date. But he did not indorse the note to him at that time. Indeed, plaintiff's title to sue is acquired through a chain of transfers which does not recognize Col. Macomb as the holder of this note until after the death of Mr. Toms and his wife, many years after the note fell due. The defendant cannot be denied such defense to the note as was open between himself and Baxter, or between himself and Toms. That defense is that, as to $200 of the amount included in the note, there was no consideration except the illegal attorney's fees. The case should have been submitted to the jury on this theory. The payments of interest, and the promises to Mr. Gray to pay the principal, must go with defendant's explanation to the jury.

The judgment will be reversed, and a new trial granted.

The other Justices concurred.