## BROWN *v.* SMEDLEY.

1. BILLS AND NOTES—TRANSFER AFTER MATURITY—DEFENSES.

In an action on a negotiable promissory note by a transferee after maturity, all defenses open as between the immediate parties are available.

2. SAME—COLLATERAL SECURITY—CONSIDERATION.

A note given simply to be used as collateral security, the payee agreeing to take care of it, and that the maker should never hear of it again, is without consideration.

3. SAME—FAILURE OF CONSIDERATION—SET-OFF—PAROL EVIDENCE.

As against the payee of a promissory note, parol evidence is admissible to show a failure of consideration, or a valid set off;

136 MICH.—5.

and such evidence is not objectionable as tending to vary the written contract evidenced by the note. *Phelps* v. *Abbott*, 114 Mich. 88, distinguished.

Error to Wayne; Donovan, J. Submitted October 21, 1903. (Docket No. 59.) Decided March 15, 1904.

*Assumpsit* by Edward C. Brown against John H. Smedley on a promissory note. From a judgment for defendant, plaintiff brings error. Affirmed.

*George P. Codd*, for appellant.

*Harry Helfman* (*Alfred Lucking*, of counsel), for appellee.

MOORE, C. J. Plaintiff sued defendant upon a promissory note given by the defendant, dated December 29, 1896, payable to the order of George S. Davis three months after date. This note was indorsed by Mr. Davis. Two defenses were interposed : *First*, that of set-off for services rendered to Mr. Davis; and, *second*, failure of consideration. The case was tried before a jury, which rendered a verdict in favor of defendant. The case is brought here by writ of error.

Counsel insists the court erred in the following particulars : *First*, in its charge to the jury; *second*, in refusing to grant a new trial; *third*, in permitting certain immaterial and irrelevant testimony.

The testimony of Mr. Davis, given apparently with great reluctance, discloses the note did not pass from him to the plaintiff until long after it matured. Any defense which might be urged against Mr. Davis is available now.

The record discloses that, for some time prior to and at the time the note was given, Mr. Parke was president of Parke, Davis & Co., Mr. Davis vice-president, and Mr. Smedley treasurer. It is the claim of plaintiff that defendant and Mr. Davis had certain transactions between each other which resulted in defendant being in debt to Mr. Davis, and that for a portion of such indebtedness the

note in controversy was given. The claim of defendant is stated by his counsel as follows:

"1. That he rendered Davis services.

"2. That the services were 'outside of,' 'independent' of, and distinct from Smedley's employment at Parke, Davis & Co.'s.

"3. That the services were rendered at Davis' request.

"4. That Davis promised to pay Smedley for those services."

Mr. Smedley and Mr. Davis are substantially agreed as to the first and third of these propositions, but Mr. Davis denies the truth of the second and fourth of them. According to both of the parties, for several years, during a portion of which time Mr. Davis was in California, Mr. Smedley raised money in his behalf, and, to aid him in doing so, 700 shares of stock, of the value of $35,000 was put in the name of Mr. Smedley by Mr. Davis. Mr. Smedley sometimes signed the notes personally and sometimes as indorser. Mr. Smedley drew the dividends on the stock. He paid interest on the amounts he had borrowed, and from time to time settlements were made. In the fall or early winter of 1896—the parties are not agreed as to the exact time, Davis claiming it was December 29th, while Smedley says it was two or three months earlier—Smedley handed a statement to Davis, showing he had borrowed for Davis, on paper coming due between October 17th and November 25th, $37,000; that during that time he had paid interest amounting to $332.65; that he had received a dividend for the first half of the year, which was paid April 14th over to Mr. Davis, and that later he received a dividend of $1,050, which was not paid over, leaving in his hands, after deducting the amount of interest, $717.35.

It is the claim of Smedley that, when he rendered the services to Mr. Davis, he expected to be paid therefor, though no amount had been fixed or charges made, and that Mr. Davis recognized his duty to pay. It is his further claim that, when the statement of the condition of

the account above referred to was handed to Mr. Davis, Mr. Smedley, who was then building a house, said to him he would like to use this balance, and that Mr. Davis then gave him the amount shown as a balance in recognition of his services. He further claims that, about two months later, Mr. Davis came to him and said he wanted to use two notes as collateral security, and that the note in suit and another were given to Mr. Davis, who said Mr. Smedley would never hear from the notes again.

Mr. Davis gives an entirely different version of the transaction. He admits Mr. Smedley rendered the service as stated by him, but says it was done during usual business hours, and without Mr. Smedley's expecting to be paid, and without Mr. Davis expecting to pay for it. He denies that he gave Mr. Smedley the balance of the dividends, and denies that when the notes were given he told Mr. Smedley he wanted to use them as collateral, and Mr. Smedley would never hear from them again. He insists they were given for the amount represented by the balance due on the dividends. Both parties are agreed the notes were not presented to Mr. Smedley for four years after they were made. Mr. Davis says this was because he did not need the money, and did not want to irritate Mr. Smedley, while it is the claim of the latter that they were not presented because he was not expected to pay them. After the notes were presented, Mr. Smedley wrote a letter, which it is claimed is inconsistent with his present position, in relation to the writing of which he made to the jury his explanation. Without going further into detail as to testimony, it will be seen it could not well be more conflicting.

It is claimed that all of the testimony as to the business transactions between Mr. Smedley and Mr. Davis, and what was said at the time the notes were given, was improperly received, as tending to vary the written contract evidenced by the notes; counsel citing *Hyde* v. *Tenwinkel*, 26 Mich. 93; *Kulenkamp* v. *Groff*, 71 Mich. 675 (40 N. W. 57, 1 L. R. A. 594, 15 Am. St. Rep. 283); *Atkin-*

*son* v. *Weidner*, 79 Mich. 575 (44 N. W. 1042); and other authorities. A more recent case, not cited by counsel, where this doctrine is fully discussed, is the case of *Phelps* v. *Abbott*, 114 Mich. 88 (72 N. W. 3). An examination of the cases cited will show a very different situation from the one involved here. In each of them there was a consideration upon which the note was based. In this case it is claimed the note was given without any consideration whatever. In the case of *Kulenkamp* v. *Groff, supra,* while the court held the parol testimony was not competent to vary, alter, or contradict the terms of the note, it also held it was admissible to show no consideration for the giving of the note. In *Phelps* v. *Abbott, supra,* it was said:

" It is true that it is always competent to show by parol a total or partial failure of consideration, or that fraud or illegality taints the instrument. But the parol undertaking attempted to be shown in the present case does not fall within these apparent exceptions. It must be kept in mind that in this case the attempt is not to assert a set-off. Defendant's claim, if any, was unliquidated. The defense was possible in this action only if the defendant could attach his alleged agreement to the note itself, and show that plaintiff had agreed to reduce the amount of the note by such a sum as should be found his due on the original transaction, if any. Nor was there a failure of consideration for the note. The attempt is to show that the promise which was made in writing is not in truth the promise which defendant made."

—Clearly implying that a failure of consideration may be shown by parol, and that set-off may also be shown by parol. This we understand to be the doctrine established by a long line of cases. See *Manistee Nat. Bank* v. *Seymour,* 64 Mich. 59 (31 N. W. 140); *Farwell* v. *Ensign,* 66 Mich. 600 (33 N. W. 734); *Shaw* v. *Stein,* 79 Mich. 77 (44 N. W. 419); *Macomb* v. *Wilkinson,* 83 Mich. 486 (47 N. W. 336); *Keidan* v. *Winegar,* 95 Mich. 434 (54 N. W. 901, 20 L. R. A. 705); *English* v. *Yore,* 123 Mich. 702 (82 N. W. 659).

If it was a fact that defendant rendered services to Mr. Davis in the expectation on the part of both that he would be paid for them, and in recognition of this Mr. Davis gave to Mr. Smedley the balance as shown by the statement, and if it be a further fact that, when the notes were given, they were given simply to be used as collateral, and were not given for the balance as shown by the statement, Mr. Davis agreeing to take care of them, so that Mr. Smedley should never hear of them again, then the notes were given without consideration. We think the testimony was competent as bearing upon these claims of defendant.

As to the charge of the court. There are some portions of it, standing separate and apart from the rest, that may be criticised; but, when taken in connection with the rest of the charge, we think it was a fair statement of the law applicable to the case.

Judgment is affirmed.

The other Justices concurred.