*In re* BRESLER'S ESTATE.

APPEAL OF FAEDER.

1. WILLS — ADVANCEMENTS — BOOKS OF ACCOUNT — EVIDENCE — WITNESSES.

Where, in a petition by a legatee for the distribution of a legacy under the terms of a will which provided-that out of the sum bequeathed should be deducted "the amount she may be owing on my books," it appeared that the amount charged against the legatee was entered on testator's books in the regular course of business prior to the execution of the will; that the accuracy of the items of the account was proven by competent evidence; that no contention was made on the trial that the account referred to in the will was not the account kept in such books; and that the legatee, the proceedings not being adverse to the estate, was competent to dispute the accuracy of the account, but chose to keep silent. *Held*, that the admission of the books as evidence was competent to show the amount of the advancements.[1]

2. SAME — CONSTRUCTION — ADVANCEMENTS — INTENTION OF TESTATOR.

In the construction of words used in wills, the intention of the testator, as appears from the connection in which they are used, is the controlling factor; and where it appeared that several of the advancements charged to the legatee were in fact made to her husband, they will be presumed to have been made for her benefit, and the fact that the words used in the will referred to such amounts as "may be owing on my books" does not necessarily refer to future transactions, where it appears that no advancements were made after the execution of the will, and there appeared no intention to forgive or cancel the advancements made.

3. SAME—BOOKS OF ACCOUNT — INCORPORATION AS PART OF WILL —IDENTIFICATION—SUFFICIENCY.

The incorporation by reference into a will of books of account kept by testator is competent if they were in existence at the time of the execution of the will and are identified by

[1] For person's books of account as evidence between other parties, see note to *State Bank* v. *Brown* (N. Y.), 53 L. R. A. 513.

clear and satisfactory proof as the books referred to in said will; and where, by the terms of the will, "the amount she may be owing on my books" was to be deducted from the legacy bequeathed, it was a sufficient reference, there being but one account and that in the documents.referred to in the will.

4. SAME—CONSTRUCTION—ADVANCEMENTS—DEDUCTION FROM LEGACY.

In an account against a legatee, which, by the terms of the will, was to be deducted from the amount bequeathed, items were charged to the legatee which had, in fact, been paid to her husband. There was no separate account kept with the husband, and the account showed an intention of the testator to charge such amounts to the legatee. *Held*, that, it being competent for both of the parties to dispute the apparent intent of the testator, and not having done so, considered with the right of the testator to so charge the sums paid, the items were established as proper charges against the legacy.

Error to Wayne; Murphy, J. Submitted January 11, 1909. (Docket No. 3.) Decided March 3, 1909.

Rose Bresler Faeder petitioned the probate court for an order of distribution of a legacy under the last will and testament of Charles E. Bresler, deceased. There was an order granting the petition, and Amanda Bresler Smith and others appealed to the circuit court. There was judgment for petitioner for less than the amount claimed, and she brings error. Affirmed.

*Tarsney & Fitzpatrick*, for appellant.

*Elliott G. Stevenson* and *Leo M. Butzel* (*William L. Carpenter*, of counsel), for appellee.

Charles E. Bresler died testate December 12, 1898, leaving surviving him a widow and seven children, including the appellant, Rose Bresler Faeder. His will was executed March 9, 1891. The will was admitted to probate June 23, 1899. The fourteenth paragraph of his will reads as follows:

"I give my daughter, Rose Faeder, the sum of sixty thousand dollars ($60,000) as her share of my estate, of which sum shall be deducted the amount she may be owing on my books. Forty thousand dollars shall be invested therefrom in good interest paying security, or can remain in the hands of my executors until the final settlement of my estate, and the interest of 5 per cent. per annum paid to her during her natural life. At her demise it shall go to her children, share and share alike."

After directing the payments of his debts and certain specific legacies named in the will, he bequeathed the residue of his estate to his six children in equal shares. Appellant, Rose Faeder, filed a petition in the probate court praying an order directing the administrator with the will annexed to pay her the whole of said legacy. The probate court held that there was no amount owing said deceased by said Rose Faeder on his books, and that there were no deductions to be made from said legacy. Several of the residuary legatees appealed that decision to the circuit court. The circuit court reversed the decision of the probate court and instructed a verdict holding that there was owing said deceased upon his books the sum of $19,261.88, and deducted that amount from the $60,000. From that judgment Mrs. Faeder has appealed.

The books of account of the deceased were received in evidence. One of these books contained an account entitled "Rose Bresler Faeder." The first entry therein was on April 1, 1885; the last December 21, 1886. The account was then carried forward to another book in form a ledger; the first entry therein being January 3, 1887, and the last June 7, 1890. According to this account there was owing to the testator from his daughter Rose the sum above mentioned. These books of account were proven to be in the handwriting of the testator and his son Joseph, who was also deceased. It was shown that Joseph assisted his father in keeping his books. The items of this account were paid largely to the husband of Rose, and some to other parties for her benefit or that of her husband, and some to her direct. The credit column

of the account shows entries of amounts paid back to testator by her husband, or for him, and Mrs. Faeder is given credit for them. These are books of original entry. Those entries not entered there in the first instance are entered from the memorandum stubs of checkbooks and two cashbooks. The appellees corroborated these entries, except in a few instances, by producing the checks or drafts and corresponding entries. Counsel for appellees have in their brief collated the evidence verifying these entries. It was conceded upon the trial that the drafts, 23 in number, bore the signature of Mr. Faeder as the drawer.

Counsel group their assignments of error under four heads:

(1) That no sufficient foundation for the admission of the books, and no sufficient showing of necessity for their introduction, were made.

(2) The books were not competent evidence of the fact of paying, laying out, and expending moneys to or for the legatee by the testator.

(3) The books cannot be considered for the purpose of reducing the amount of the legacy upon the theory that they had been incorporated by reference into the will, and were not probated as a part of the will, or executed with the formality required as to testamentary disposition.

(4) The court erred in admitting evidence tending to show payment of the moneys charged in the legacy account not to her personally, but to her husband and another.

GRANT, J. (*after stating the facts*). 1. It is no longer necessary in this State to introduce testimony of witnesses not parties to the suit that they have settled by the books, and have found them correct. *Seventh-Day Adventist Publishing Ass'n* v. *Fisher*, 95 Mich. 274. To this extent that case overruled *Jackson* v. *Evans*, 8 Mich. 476. The statute permitting litigants to testify obviated the necessity for that rule. In *Seventh-Day Adventist Publishing Ass'n* v. *Fisher*, the clerks who kept the books testified that they were correctly kept and the items

duly entered, and the books were admitted. The testator in the language, "owing on my books," referred to his books of account, kept in the course of his business. *Lawrence* v. *Lindsay*, 68 N. Y. 108. He was a business man. The entries in the account with his daughter, introduced in evidence, are shown to have been made in the regular course of business and on the books of original entry. The entries were all made before the will was executed. The accuracy of most of the items in the account is proven by other competent evidence. The competency of these books as evidence is clearly shown by *Macomb* v. *Wilkinson*, 83 Mich. 486. The court said in that case, speaking through Justice CAHILL:

"The daybook was authenticated as one kept by Mr. Thoms in his lifetime. The entry was one of many made by him in the regular course of business, and comes within a familiar rule of evidence. *Price* v. *Earl of Torrington*, 1 Smith's Lead. Cas. (8th Am. Ed.) 563, and notes."

A book of accounts in the handwriting of a deceased partner was held admissible as tending to prove both a partnership and the condition of its accounts. *Howard* v. *Patrick*, 38 Mich. 795. See, also, *Dodge* v. *Morse*, 3 N. H. 232; *Hoover* v. *Gehr*, 62 Pa. 136; *New Haven & Northampton* v. *Goodwin*, 42 Conn. 230.

This account, however, was admissible for another reason. It was made upon the testator's books; he understood it; he made many of the entries in it. Until his illness in September, 1892, he looked after his own business. It is not contended, and cannot be, that his will did not refer to this account. This being so, it would be immaterial where he referred to the account as kept. Where a testator provided in his will that any sum of money that he might advance to any of his legatees, and should signify the same in writing, should be deducted from the legacy, it was held that a paper stating that he had advanced certain sums over and above all claims and demands or set-off was inadmissible, because it furnished no means to

determine when or how it was made up, or what items were allowed; but the court said:

"We have no doubt that, if the amount stated in this paper was actually advanced to appellant, the writing was proper to show decedent's purpose to treat it as an advancement. It complies with the method suggested in the will, and, while not strictly within the terms of the statute concerning advancements, is within its equity as evidence of intention; but whether it is evidence that advances were actually made is a different question." *McClintock's Appeal*, 58 Mich. 154.

If in that case, as in this, where the checks and drafts and cash payments have been proven by other evidence than the paper itself, the evidence aliunde had established the accuracy of the account, it would have been admissible. The claim of the appellant was not adverse to the estate, and therefore both she and her husband were competent witnesses. If this account was not accurate, they alone could have shown its inaccuracy, for they alone had knowledge of the facts. *McClintock's Appeal*, supra. They were present at the trial and chose to keep silent. Nearly all the items were traced directly to appellant's husband or herself. This evidence, standing uncontradicted, and given in the presence of those who alone could contradict it, establishes the account beyond controversy. There was therefore no error in admitting the account upon the testator's books.

2. It is urged that the expression "owing on my books" necessarily implies the ordinary relation of debtor and creditor between the testator and his daughter; in other words, that the payments or advancements must have been made to her personally, and that, inasmuch as most of them were to her husband, they were not owing from her to her father. The word "owing" does not always necessarily imply an enforceable obligation. Used in a business sense in correspondence or contracts between business men dealing with one another, the word naturally implies a legal obligation. Other words may be used

in connection with it to explain and modify its meaning when used in ordinary transactions between debtor and creditor. It is manifest that the testator, in making his will, treated payments or advancements to his daughter's husband the same as made to her for her benefit. Such a course is natural, and a parent may well consider money given to the husband as intended for the benefit of his wife. The items in this account are not charged as having been paid to the husband, but as paid to her. The testator clearly did not have in mind the creation of a legal liability including only such sums as he gave directly to his daughter, but such also as he gave to her husband, from which presumably she would derive a benefit. He therefore referred to the account as he kept it and as it appeared on his books. Where a testatrix used the words "owing and unpaid," referring to certain obligations of her sons, who were her legatees, it was held that the term "owing" did not necessarily imply an enforceable obligation, but must be read as explained by its associate word "unpaid." *In re Tompkins' Estate*, 132 Cal. 173. In construing words in wills the intention of the testator, as appears from the connection in which they are used, is the controlling factor. In this case there is no question but that the testator intended the words "owing on my books" to include the sums which he had paid to his daughter's husband. It is, however, insisted that the words "may be," used in the will, referred to future transactions, and not to those already appearing upon his books. Here again the learned counsel insist upon a strict construction, and cite cases where in construing statutes the words "may be" have been held to be prospective only. It is a cardinal rule, in construing legislative enactments, that they will not be given a retroactive effect unless the language used permits no other reasonable construction. *Ihmsen* v. *Navigation Co.*, 32 Pa. 153; 2 Lewis' Sutherland on Statutory Construction (2d Ed.), § 580; Black on Interpretation of Laws, § 103. That rule does not apply in the construction of wills.

The testator in this case had an account on his books with his daughter, commencing in April, 1885. Whether he contemplated further additions to this account or further credits to his daughter we need not consider. The fact is that the account stood unchanged after his will was made. To sustain her contention would result in holding that the testator intended to forgive and cancel the account of nearly $20,000 charged against her. No such intention can possibly be inferred.

3. Does the statute on wills of this State (3 Comp. Laws, §§ 9265, 9266) permit a reference in a will to another document? Counsel's argument is that these books have not been attested and signed as the statute requires, and therefore the reference to them is invalid. Counsel admit that other courts have held such reference valid, but state that the question has never been decided in this State. *McClintock's Appeal*, supra, recognizes the rule, although the precise question was not presented. The practice of referring to such documents in wills has been common; the only requirement being that the reference should be so definite as to leave no question of identification, although evidence aliunde might be necessary to establish its identity. The rule is well stated, and a great number of authorities cited, in a note to *Thayer* v. *Wellington*, 85 Am. Dec. 762 (9 Allen [Mass.], 28):

"If a will, duly executed and witnessed according to the requirements of the statute, incorporates into itself by reference any document or paper not so executed and witnessed, whether such paper referred to be in the form of a will or codicil, or of a deed or indenture, or of a mere list or memorandum, the paper so referred to, if it was in existence at the time of the execution of the will, and is identified by clear and satisfactory proof as the paper referred to therein, will take effect as part of the will, and be admitted to probate as such."

Manifestly, cases like that of *In re Young's Estate*, 123 Cal. 337, do not apply to this case. In that case the testatrix willed to her husband, among other things, two deeds. The will left no means of identification. Any

two deeds would comply with the terms of the will. Parol evidence was held not admissible in a will to explain a patent ambiguity. There was no reference to two specific deeds which could be readily identified. Neither does the recent case of *Bryan's Appeal*, 77 Conn. 240 (68 L. R. A. 353), control. There the testator bequeathed to his wife $50,000, "in trust, however, for the purposes set forth in a sealed letter which will be found with this will." The court held that:

"The reference is so vague as to be incapable of being applied to any instrument in particular as a document existing at the time of the execution of the will. The vice is that no particular paper is referred to."

Further discussion of the point is unnecessary.

4. Is the reference in the will sufficiently definite? It is difficult to conceive how it could be more definite. It referred to but one account. It referred specifically to the place where it was to be found, namely, "on my books." The clear weight of authority sustains this provision of the will. 1 Underhill on Wills, § 447; *Robert* v. *Corning*, 89 N. Y. 227; *In re Moore*, 61 N. J. Eq. 616; *In re McKibbin's Estate*, 207 Pa. 5.

5. Are the payments or advances made by the testator to his son-in-law properly chargeable against the legacy? Counsel for appellee cite cases from North Carolina, Kentucky, Alabama, Virginia, and Maryland, holding that advancements made to a son-in-law are presumed prima facie to be given in advancement to his daughter. Those decisions were probably rendered under the common law governing the rights of married women. Under our own married woman's act, giving to women the exclusive control over their own property, it is at least very doubtful whether the payments or advancements involved in those decisions could be charged against a legacy, or against a daughter's interest in the estate of an intestate. The decision of that question is unnecessary in this case. While the term "advancement" is generally used in cases of in-

testacy, the term is also used as applicable to cases of wills. Where in either event the intention is clear that the sums advanced should be deducted from the amounts due the devisee under a will, or heir in case of intestacy, that intention must prevail. If the testator in this case had entered an account on his books with his son-in-law in the ordinary way, showing the relation of debtor and creditor, the natural presumption under our statute would be that the testator had an independent account with his son-in-law and was dealing exclusively with him, and not with his wife; but the testator had no such account with Mr. Faeder. Three small items in this account with his daughter are entered " B. L. Faeder." What was the testator's intention in making these entries and keeping this account with his daughter and exclusively in her name?

Clearly he did not intend to create the relation of debtor and creditor between himself and Mr. Faeder, or he would have made an independent account with him. It was equally clear that he did intend to charge the amounts, paid to Mr. Faeder, to his daughter. If it was so charged with her consent, it became a legal liability against her. The intention of the testator must prevail, unless the law forbids. It is beyond dispute that the testator in making these entries and in keeping this account understood that the relation of debtor and creditor between him and his son-in-law did not exist, and that he did intend these payments to be made on account of his daughter. The estate has no claim against Mr. Faeder, for the testator has clearly indicated that he did not consider his son-in-law as a debtor. Here also, if there were doubt about the facts, it was in the power of the appellant and her husband to refute them. *Marsh* v. *Brown*, 18 Hun (N. Y.), 319. Aside from the above consideration, "a man may do what he will with his own." If Mr. Bresler desired to advance money to his son-in-law and deduct that from the amount he desired to leave to his daughter, there is no objection, legal or moral, to his doing

so. This he intended to do, and did. No other conclusion can be deduced from his will and the account.

6. It is lastly insisted that the sum of $10,092.44 must in any event be deducted from the amount. This is claimed for the reason that on August 11, 1885, there appears in the credit column of the account this amount. That item is the sum of the items in the debit column up to that date. Below these are entered several other items as credits. This item of $10,092.44 is entered in the credit column directly opposite an item of $300. In carrying forward the account to another book this $10,092.44 is not deducted. Upon the face of the account it is apparent that for some reason the testator added the amounts charged at the time of the then last entry, and for convenience placed the amount of the debit column directly opposite. There is nothing in the record or upon the books to give color to the claim that this was intended as a credit, except the bare fact that it appears in the credit column. Here again it may be said that if the appellant or her husband had made any such payment, or was entitled to any such credit, it was in their power to show it; but they chose to keep silent.

The judgment is affirmed.

Montgomery, Ostrander, Hooker, and Moore, JJ., concurred.