HARTFORD FIRE INSURANCE CO. *v.* BAKER.

1. EVIDENCE—BOOKS OF ACCOUNT—PRINCIPAL AND SURETY.
   Insurance company's ledger, containing original entries of transactions with its agent, which its assistant auditor testified were made under his charge and supervision and were correct, was admissible in evidence in company's action against sureties on agent's bond.

2. TRIAL—PRIMA FACIE CASE—DIRECTED VERDICT.
   Where *prima facie* case was made out against sureties on agent's bond, it was error to direct verdict in their favor.

Appeal from Lapeer; Smith (Henry H.), J. Submitted January 8, 1932. (Docket No. 86, Calendar No. 36,005.) Decided April 4, 1932.

Assumpsit by Hartford Fire Insurance Company, a Connecticut corporation, against Ray Baker and Daniel J. O'Brien on an agent's surety bond. Directed verdict and judgment for defendant O'Brien. Plaintiff appeals. Reversed, and new trial granted.

*Herbert W. Smith* · and *Kenneth H. Smith,* for plaintiff.

*John Loughnane,* for defendant O'Brien.

BUTZEL, J. Ray Baker and D. J. O'Brien of Lapeer, Michigan, defendants, on August 26, 1924, became sureties on a bond given by John J. Heenan of the same place to plaintiff Hartford Fire Insurance Company. They bound themselves as follows:

"Now, therefore, the condition of this obligation is such that, if the said principal shall in all respects

As to authentication of books of account and entries as affecting admissibility in·evidence, see annotation in 52 L. R. A. 590; 65 A. L. R. 330.

faithfully fulfil the agreements with the said company, as well as observe and carry out the instructions which may be given to him or them, either through its own officers or through the general agents of the western farm department, special or State agents, and shall duly and properly account for and pay over to the said company all premiums, premium notes and proceeds of such notes coming into his or their hands on or for policies of insurance (and shall pay back to the said company the commissions and fees advanced to him or them, by the said company, on all notes which are not paid at maturity); and shall also refund to the said company the unearned commissions on the premiums returned under canceled policies; and all moneys of the company which may at any time come into his or their hands, or pass under his or their control, from any source whatsoever; and shall apply all sums of money or funds which he or they may receive for the payment of losses or other purposes, in such manner as he or they may be instructed by said company; and shall also·duly and properly discharge any and all indebtedness or liabilities due from him or them to the said company, account for all goods, chattels, or other property which may come into his or their hands or possession, or under his or their control for and on behalf of the said Hartford Fire Insurance Company; and shall keep true and correct books of accounts, and make regular and full and correct reports of the business transacted by him or them for the said company; and shall in all respects well and faithfully discharge and perform his or their duties as such farm agent; and shall, upon termination of his or their said farm agency, from any cause whatsoever, deliver up and hand over all moneys, notes, books, accounts, memoranda, property, effects, and other things belonging to the said Hartford Fire Insurance Company, or connected with or growing out of the said farm agency, to such person or persons as

the said Hartford Fire Insurance Company, or the general agents of the western farm department, special or State agents shall order and direct; and shall reimburse said company for all extra expenses occasioned by any delinquency or failure to comply with the foregoing conditions; then this obligation to be void, otherwise to remain in full force and virtue."

Alleging Heenan's default, plaintiff brought suit against the two sureties to recover moneys alleged to be due it from Heenan and for the payment of which it is claimed the sureties were liable under the bond. At the trial in 1930, plaintiff offered in evidence the wide sheets from its ledger showing in detail the entire transactions with Heenan. The sheets indicate that entries were made in consecutive order from day to day, beginning September 14, 1924, and running through December, 1927. The entries are the first and original ones on plaintiff's books. The ledger is its original book of entry. The headings "Lapeer, Michigan, John Heenan Agent," and "Agency Account" appear at the top of each sheet, which is divided into 15 columns. The following captions appear at the top of the respective columns: "Previous Bal.," "Date," "Policy No.," "Description," "Total Premium," "Cash Coll.," "Premium," "Commission," "Return Commission," "Debits," "Credits," "Net Premium," "Net Return Premium," "Balance," "Proof." Appropriate entries were made across the page as applications for insurance were received from Heenan, and policies were issued. At a glance each transaction may be seen in its entirety. The entries were not posted from any other book.

Heenan's contract does not show the commission he was to receive. Plaintiff's accountant testified

that the scale of commission was governed by the agreement of the ''Farm Association,'' of which all stock companies are members, and which fixes the agent's commissions at 20 per cent. of the premium when paid in instalments and 25 per cent. on cash business. The applications sent in by Heenan were not introduced. The testimony indicates that the old applications were destroyed. Plaintiff depended entirely on the ledger sheets to prove its claim. The entries on the sheets were made with a large billing machine by two young lady typists who did not testify. The assistant auditor in charge of the books during the period the claim against Heenan arose testified that the entries were made under his charge and supervision, that they were original entries, that they were correctly made, and were checked and audited by him. The auditor also testified that they were correctly transcribed from the applications. No witnesses testified from personal recollection in regard to the items. The trial judge held the books were inadmissible under the circumstances so as to charge a gratuitous surety, and directed a verdict for defendants. We believe the books were admissible. A *prima facie* case was made out and should have been submitted to the jury. See *Macomb* v. *Wilkinson*, 83 Mich. 486; *Seventh-Day Adventist Publishing Ass'n* v. *Fisher*, 95 Mich. 274; *In re Bresler's Estate*, 155 Mich. 567, 571; *Kuennan* v. *U. S. Fidelity & Guaranty Co.*, 159 Mich. 122; *Halloran's National Detective Agency* v. *Weiden*, 238 Mich. 242.

The judgment is reversed, with costs to plaintiff, and the case remanded for a new trial.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.