## HOLDSWORTH v. BLYTH & FARGO CO.

(No. 809; Decided March 8th, 1915; 146 Pac. 603.)

APPEAL AND ERROR—BILLS AND NOTES—BURDEN OF PROOF—EVIDENCE
—NEGOTIABLE INSTRUMENTS—HOLDER IN DUE COURSE—DEFECTIVE
TITLE—PAROL EVIDENCE—ORAL AGREEMENTS—COLLATERAL AGREE-
MENTS—PRESUMPTIONS—SUFFICIENCY OF ASSIGNMENT OF ERROR—
MOTION FOR NEW TRIAL—STATUTES.

1. Under the provisions of the Uniform Negotiable Instru-
ments Law (Sections 3203, 3210, 3213, 3214, 3215 and 3217
Compiled Statutes 1910), the holder of an instrument
negotiated in violation of an agreement that it should not
be negotiated, cannot rely solely upon the presumption
that he is a holder in due course, but has the burden of
proving it, when it is denied, and the mere production of
the note is insufficient proof.

2. Parol evidence is admissible to show an agreement, that
an instrument in form negotiable shall not be negotiated.

3. An assignment of error in a motion for a new trial that
"the court erred in allowing evidence to be introduced
over the objections and exceptions of plaintiff" is not
sufficiently definite to present a question of error, as to
the admission of defendants' evidence to the effect that
the note in suit was not to be negotiated.

4. In an action on a note annexed to a sale contract, both
being made and entered into at the same time, with
plaintiff's assignor, a printed notation appearing below
the signature to the contract to the effect that the note
was given for the bill of goods ordered, and that the
seller might detach the note upon acceptance of the
order, said notation not being a part of the printed con-
tract itself, did not prevent the making of a valid oral
agreement that the note should not be negotiated, or even
that it should not be detached, and even if the note might
be detached, the notice did not permit its negotiation in
violation of an agreement that it should not be negotiated,
but would remain in the seller's possession, until the end of
the contract period and in such case the maker may
show that it was conditionally delivered.

5. A sales contract made and signed by buyer and seller bear-
ing a printed notation below the signatures of the parties
to the effect that the "installment agreement below" was
given in settlement for the bill of goods ordered and
might be detached upon acceptance of the order by the
company or returned to the customer, if the order was

not accepted, the "installment agreement" referred to being a promissory note negotiable in form, the maker exacted an oral promise from the agent of seller before signing or delivering the note to the effect that it would not be negotiated, but would remain in the seller's possession, until the end of the contract period;—*held*, that parol evidence of the oral agreement did not vary the terms of the sales contract, for the reason that the printed notation on the margin of the sales contract relating to the detachment of the note, was not a part of the written contract.

ERROR to the District Court, Uinta County, Hon. DAVID H. CRAIG, Judge.

The material facts are stated in the opinion.

*W. A. Muir,* for plaintiff in error.

The court erred in permitting the admission of oral testimony tending to vary the terms of a written contract. (Amer. Eng. Ec. Vol. 4, Pg. 146; Walker v. Crawford, 56 Ill. 444, (Am. Rep. 701); Stewart v. Albuquerque National Bank, 30 Pac. 303; Forsyth v. Kimball, 91 U. S. 294; Brown v. Spofford, 95 U. S. 474; Burnes v. Scott, 117 U. S. 582, 29 L. Ed. 991; Genesee Savings Bank v. Kindt, 7 Wyo. 321; Burke v. Dulaney, 153 U. S. 226-228.) Plaintiff in error was a *bona fide* holder in due course and the court erred in rendering judgment for a sum less than the face value of the note. Where failure of consideration is alleged the burden of proving such failure and that plaintiff, who received the note before maturity had notice of such defense, was upon defendant. (Sections 3214, 3215, 3216 and 3217, Compiled Stautes 1910; Mitchell v. Deeds, 49 Ill. 416, 95 Am. Dec. 621; Regan v. Jones, 1 Wyo. 210; Farrell v. Lovett, 68 Me. 326, 28 Am. Rep. 59.) Even where fraud was practiced in securing the execution of a note, a *bona fide* holder may recover, if the maker was negligent in signing the instrument. (Amer. Eng. Enc. Vol. 4, Pg. 327; Ruddel v. Fhalor, 72 Ind. 533; Ross v. Doland, 29 Oh. St. 473; Pruty v. Roberts, 52 Am. Dec. 761; Bigelow on Neg. Insts. 222.) Gen-

erally, evidence of alleged misrepresentations or fraud in securing the execution of a note is not admissible against a *bona fide* holder. (Swift v. Tyson, 41 U. S. 166, 10 L. Ed. 871.)

*P. W. Spaulding,* for defendant in error.

The allegations of fraud and misrepresentation in defendant's answer were not controverted by a reply and must be taken as true. (Section 4401, Comp. Stats. 1910.) The third assignment of error, as to the admission of testimony, is insufficient. (Iowa State Bank v. Henry, 136 Pac. 863, 864 (Wyo.) An objection that offered evidence is immaterial, irrelevant and incompetent is insufficient to present a question as to whether the evidence offered tends to vary the terms of a written contract. (Iowa State Bank v. Henry, *supra.*) The note having been secured by fraud, the title of the negotiator was defective. (Sec. 3213, Comp. Stats. 1910.) When this was shown, the burden of proof was placed on the holder to prove that he was a holder in due course. (Sec. 3217, Comp. Stats. 1910.) A holder in due course is defined by Statute. (Sec. 3210, Comp. Stats. 1910.) There was no evidence offered by plaintiff on this point; hence, he was in no better position, than the original payee, as to defenses of fraud and misrepresentation. Parol evidence of an agreement not to negotiate a note and that a subsequent violation of such an agreement worked a fraud upon the maker is admissible. (McKnight v. Parsons, 136 Iowa 390, 22 L. R. A. N. S. 719, and see note at pp. 721 and 722; Citizens Bank v. Houtchens, (Wash.) 116 Pac. 867, 868.) The holder should have pursued the Puritan Mfg. Co., who was the original payee and endorser, and his failure to do so under the circumstances is in evidence of bad faith. (Union Inv. Co. v. Rosenweig, 139 Pac. 875-876.)

Potter, Chief Justice.

The plaintiff in error, H. N. Holdsworth, brought this action to recover from the defendant, the Blyth and Fargo

Company, a corporation, the sum of $1,000 and the legal rate of interest thereon from March 3, 1911, alleged .to be due to the plaintiff, as the owner and holder of a promissory note reading, with the indorsements thereon, as follows:

"Chicago., Ill., March 18, 1910.

For Value Received, the undersigned promises to pay at Chicago, Ill., to the order of Puritan Mfg: Co. One Thousand Dollars as follows:

$1.000.00 . . . . . . . . . . 12  Mos.  after  date.
$ . . . . . . . . . . . . . . . . . . . .  Mos.  after  date.
$ . . . . . . . . . . . . . . . . . . . .  Mos.  after  date.
$ . . . . . . . . . . . . . . . . . . . .  Mos.  after  date.
$ . . . . . . . . . . . . . . . . . . . .  Mos.  after  date.
$ . . . . . . . . : . . . . . . . . . . . .  Mos.  after  date.

A discount of six per cent will be given .if the full amount of this instrument is paid at maturity of first installment. Non-payment of any installment for more than 30 days after maturity renders remaining installments due at holder's option.

P. O. Evanston, Wyo.        The Blyth & Fargo Co. ·
                                        By Thos. Blyth."

Indorsements: "Apr. 11, 1910." "Puritan Mfg. Co., by M. H. Taylor," "H. N. Holdsworth." "Pay any Bank or Banker, or order, Johnson County Savings Bank, Iowa City, Iowa. Geo. L. Falk, Cashier."

It is alleged in the petition that the note was indorsed by the payee named therein to the plaintiff in due course of business before maturity and for a valuable consideration. That averment is denied by the answer, which, also, denies that there is anything due to the plaintiff from the defendant upon said note, and alleges in substance that by means of fraudulent representations as to the quality of certain articles of merchandise the defendant was induced to enter into an agreement in writing with the Puritan Manufacturing Company for the purchase of said articles, which agreement is set out in full in the answer, and that

the note sued on was executed for the purchase price and as a part of the contract, and further, that the note was negotiated, if at all, by the said Puritan Manufacturing Company, in breach of faith, in violation of an agreement that the note should not be negotiated, sold or transferred to any person whatever, but should at all times be and remain the property of and under the control of said Puritan Manufacturing Company for the protection of the defendant in its right under the contract to return at the end of one year all of the goods so purchased and remaining unsold, and receive credit therefor. The case was tried to the court without a jury and judgment was rendered in favor of the plaintiff for $141.06, upon a finding that the defendant had executed and delivered the note and that there was due thereon the said sum. A motion for new trial was filed by the plaintiff, stating the following grounds: 1. That the court erred in finding for the plaintiff in the sum of $141.06 instead of for the full amount claimed in the petition. 2. That the court erred in its findings, and that the judgment is contrary to and against the law and evidence. 3. That the court erred in allowing evidence to be introduced over the objections and exceptions of the plaintiff. The motion was denied, the plaintiff excepted to the ruling, and he is here seeking a reversal of the judgment, assigning as error the specific grounds stated in the motion for new trial, and the ruling denying that motion.

Upon the trial the plaintiff offered the note in evidence and it was admitted upon proof tending to show that the signature of the maker thereof was that of Thomas Blyth, the president of the Blyth and Fargo Company. And no further evidence was produced or offered in the case on behalf of the plaintiff, except that upon cross-examination of the attorney for the plaintiff, who testified as to the signature of the maker of the note, he stated that he received the note after its maturity from an attorney residing at Iowa City, Iowa, representing the plaintiff; that the plaintiff resided in that city, and that it was, also, the

place of business of the Puritan Manufacturing Company, and that he had no personal knowledge of the execution of the note, nor of any facts concerning it prior to the time he received it, and no personal knowledge of the indorsement of the note to the plaintiff.

The evidence for the defendant established the following facts: The Puritan Manufacturing Company, represented in its contract with the defendant presently to be referred to as not incorporated, and as a manufacturer of jewelry and novelties, with its factory located at Iowa City, Iowa, and branch offices at Chicago, Winnipeg and Toronto, and furnishing the manufactured articles from the factory direct to the retailer, solicited, through its agent and salesman, who represented himself to be also a partner in the concern, an order from the defendant, a corporation conducting a mercantile business at Evanston, in this state. The order was solicited for goods to be selected from samples exhibited at the time, and to be furnished by the selling company upon certain warranties, conditions and agreements stated in a printed form of contract, under a plan or scheme described or referred to therein as the "Piano Advertising Campaign," the details of which plan are not material here, but it may be said that it involved the furnishing by the selling company of certain advertising material in addition to any goods that might be ordered. Thereupon, on the 18th day of March, 1910, the defendant ordered from said company a list of goods amounting in price to $1,000 and entered into a contract with the company, using the printed form aforesaid, stating the terms and conditions of the order and sale, which contract recited the terms of payment to be 12 months from date, and contained among other provisions the following: "In consideration of purchaser complying with all the conditions of this order at the time and manner stated herein, and promptly meeting any obligation entered into with the Puritan Mfg. Co. and using ordinary diligence in the sale of these goods and reporting quarterly, itemizing goods on hand and unsold, The Puritan Mfg.

Co. hereby guarantees that the purchaser's gross profits from the sale of goods bought under this order shall not be less than 50 per cent of the amount of this order for a period of one year from the date hereof, and the Puritan Mfg. Co. further agrees and holds itself bound at the end of said period, to buy back at the purchase price, at the expiration of this agreement, all goods remaining on hand at that time." It was, also, stated in the contract that all goods manufactured by said selling company are warranted to give satisfaction as to workmanship, quality and wear; that all goods shipped under the order are warranted to be the same in quality, class and character as samples shown by salesmen, and that all goods shipped in the order will prove saleable at a reasonable retail profit. On behalf of the Puritan Manufacturing Company, the contract was signed by its agent and salesman, who, as above stated, represented himself at the time to be also a partner in the company. At the bottom of said printed form of contract was a printed form of note. At the time of executing the contract the defendant also signed said note, the blanks therein being properly filled to show the date of execution, the amount, and date of maturity. That note is the one here sued on. Below the signatures to the contract and immediately above said note appeared the following printed notice or memorandum: "The installment agreement below is given in settlement for the above bill of goods, and the company is authorized to detach it when this order is accepted, or will be returned to customer if order is not accepted." The following provision or notice was also contained in the printed contract: "Our agent is merely a soliciting salesman, and all orders are subject to our approval or disapproval at factory. Purchaser must, therefore, see to it that all arrangements pertaining to this order are shown hereon as none others will be recognized." The agent of said selling company, who represented himself to be a partner, stated, at the time the order was given and the contract and note executed, that the note would not be detached, negotiated or sold,

but would remain in the possession of the Puritan Manufacturing Company. That fact was testified to not only by the president of the defendant company, who signed the contract and note, but also by the buyer and manager of its dry goods department, and who transacted the business of selecting the goods ordered. The president of the company, Mr. Blyth, testified that when he signed the agreement and the note the understanding was that the note was not to be detached or negotiated until the goods were disposed of, and it was to remain in the full possession of the Puritan Manufacturing Company, so that the Blyth and Fargo Company might get credit for the goods unsold at the end of the contract. He, also, testified that he signed the contract with the understanding that the note would not be negotiated. The other witness referred to testified to the agreement as to the note remaining in the possession of the payee substantially in the same language, viz: "The note was not to be detached from the contract and was not to be negotiated, but kept in the possession of the Puritan Manufacturing Company, so that the goods returned by the Blyth and Fargo Company to the Puritan Manufacturing Co. could be credited on this note."

At the end of one year from the date of the contract the defendant had sold of the goods furnished thereunder goods of the value, according to the purchase price, of $141.06, and returned to the Puritan Manufacturing Company the remainder of the goods of the value, according to purchase price, of $858.94. During the year the goods were placed in the most prominent place in the store of defendant for display to customers, and the evidence tends to show at least ordinary diligence in disposing of them. Quarterly reports were sent by the defendant to the Puritan Manufacturing Company of the goods which had been received and remained unsold; such reports being sent in accordance with the agreement, each report giving an inventory of the goods remaining on hand. Prior to returning the goods the defendant requested direction from

the manufacturing company as to the disposition to be made of the goods remaining on hand, saying that they wanted to get rid of them, but the letter was not answered, and after waiting a reasonable time they finally advised the company that the goods were being returned and that the defendant would pay for the goods sold upon a bill being rendered therefor. There was, also, evidence to the effect that the goods furnished were of poorer quality than the samples.

We do not understand it to be contended that, as against the Puritan Manufacturing Company, the payee named in the note, the defendant would not be entitled to a credit upon the note for the goods returned. Without considering any of the warranties or guaranties contained in the contract for the sale of the goods as to their quality or saleable character or the purchaser's profits, it is clear that under the provision of the contract binding the selling company to buy back at the purchase price, at the expiration of one year from the date of the contract, all goods then remaining on hand, the said company became indebted to the defendant for the amount of the purchase price of the goods that remained on hand at the end of said period of one year and were returned; and the amount thereof would be allowable as a credit on the note had it been retained and sued on by said company. The right of the defendant to have the amount allowed as a credit in this action on the note brought by the plaintiff as indorsee and holder thereof depends upon the question whether the plaintiff is shown to be entitled to recover upon the note as the holder of a negotiable instrument in due course. The Negotiable Instruments Law defines a holder in due course as follows: "A holder in due course is a holder who has taken the instrument under the following conditions: 1. That the instrument is complete and regular on its face. 2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact. 3. That he took it in good faith and for value. 4. That at the time it was nego-

tiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." (Comp. Stat. 1910, Sec. 3210.) It is provided in Section 3203 that "except where an indorsement bears date after the maturity of the instrument, every negotiation is deemed *prima facie* to have been effected before the instrument was overdue"; and by Section 3215 that "a holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties, among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." Section 3214 provides: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." And by Section 3217 it is declared, that every holder is deemed *prima facie* to be a holder in due course.

When, therefore, the evidence of the plaintiff was closed, the note having been produced, offered and admitted in evidence, the plaintiff had shown himself *prima facie* to be a holder in due course and entitled to recover the full amount of the note with any interest that might be due thereon. But Section 3217, which declares that every holder is deemed *prima facie* to be a holder in due course, contains other provisions material to this controversy, the whole section reading as follows: "Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title." And Section 3213 prescribes what constitutes a defective title in one negotiating an in-

strument as follows: "The title of a person who nego-
tiates an instrument is defective within the meaning of
this chapter when he obtained the instrument or any sig-
nature thereto, by fraud, duress, or force and fear, or
other unlawful means, or for an illegal consideration, or
when he negotates it in breach of faith, or under such
circumstances as amount to a fraud."

The Negotiable Instruments Law of this state is the uni-
form law upon the subject adopted in a majority of the
states, and it is well settled by the authorities construing
and applying the provisions above quoted, and also in the
absence of such statutory provisions, that where the in-
strument has been negotiated in violation of an agreement,
the holder cannot rely merely upon the presumption that
he is a holder in due course, but he must assume the bur-
den of proving that fact; the mere production of the note
or its admission in evidence being insufficient for that pur-
pose. (McKnight v. Parsons, 136 Ia. 390, 113 N. W. 858,
125 Am. St. Rep.; 15 Ann. Cas. 665, and note to the case
as reported in 22 L. R. A. (N. S.) 718; Bank of Bushnell
v. Buck Bros. (Ia.) 142 N. W. 1004; Ireland v. Shore,
(Kan.) 137 Pac. 926, 91 Kan. 326; National Revere Bank
v. Morse, 163 Mass. 383; Brannan's Neg. Instr. Law,
(2nd Ed.) Sec. 59 and notes, pages 68-71.) And parol
evidence is admissible to show an agreement that the in-
strument shall not be negotiated. (McKnight v. Parsons,
supra; Beach v. Nevins, 89 C. C. A. 129, 162 Fed. 129,
and case note in 18 L. R. A. (N. S.) 288.) Therefore, upon
proof sufficient to establish the defense that the note, if
negotiated at all, was negotiated in breach of faith, that
is to say, in violation of the alleged agreement that the
note should not be negotiated, but should remain in the
possession of the payee until maturity so that the defend-
ant, the maker, could be credited thereon with the purchase
price of the goods returned in accordance with the agree-
ment, it became incumbent upon the plaintiff to prove that
he became the holder of the note before it was overdue,
that he took it in good faith and for value, and without

any notice at the time of the defect in the title of the per-
son negotiating it.   The plaintiff did not introduce or offer
any such proof.

But it is contended that the evidence on the part of the
defendant showing the agreement that the note was not to
be negotiated was erroneously admitted over plaintiff's ob-
jection, for the reason that it tended to vary and contra-
dict the written contract aforesaid entered into at the same
time that the note was executed between the maker and
payee thereof.   The motion for new trial was insufficient
to raise the question of error in the admission of such evi-
dence, for the reason that the only ground stated in the
motion which would in any way refer to the matter is too
general and indefinite, viz:   "That the court erred in al-
lowing evidence to be introduced over the objections and
exceptions of the plaintiff."   Nor did the objections inter-
posed to this evidence present to the trial court any point
now insisted upon.   Upon the direct examination of Mr.
Blyth, the president of the defendant company and the
one who signed its name to the note, he was asked to state
the circumstances under which the note was signed, and
he stated that the note was attached to the contract and
the agent with whom the contract was made said that the
note would not be detached, negotiated or sold, but would
remain in the possession of the company.   Counsel for
plaintiff then moved that the answer be stricken out as in-
competent, irrelevant and immaterial and not the best evi-
dence.   The same witness was afterwards asked to state
what the understanding was between the Blyth and Fargo
Company and the Puritan Manufacturing Company at the
time the contract and note were signed as to the negotia-
tion of the note.   The question was objected to as "imma-
terial and irrelevant and not the best evidence, and for the
reason that it makes no difference to an innocent person
for value what understanding was had at the time this con-
tract was signed."   When Mr. Barnes, the other witness
for the defendant who testified as to this agreement, was
asked if there was any agreement with reference to the

note attached to the contract, the question was objected to as immaterial and irrelevant and proving no issues in this case and for the reason that a copy of the original contract is here in evidence, and that the question calls for oral testimony, and not the best evidence. But the evidence was not, in our opinion, objectionable on the ground now urged. The contention is based upon the words of the printed notation upon the sheet containing the contract for the order and sale of the goods, hereinbefore quoted, to the effect that the "installment agreement below" (referring to the note) is given in settlement for the bill of goods ordered, and the company is authorized to detach it when the order is accepted, or it will be returned to the customer if the order is not accepted. That statement or provision was not contained in the body of the contract. It was below the signatures to the contract, and followed the abbreviation "N. B.", being the second paragraph under that abbreviation, the preceding paragraph reading as follows: "When returning goods customers are requested to carefully mark package with name and address so as to insure proper attention." The statement that the company is authorized to detach the note upon acceptance of the order cannot therefore be regarded as anything more than a notice to the customer that the company would, upon accepting the order, consider itself authorized to detach the note or the so-called installment agreement. And we do not think it prevented the making of a valid oral agreement that the note should not be negotiated, or even that it should not be detached. But if it should be conceded that by reason of such printed notice the note might rightfully be detached, notwithstanding an oral agreement to the contrary, the notice cannot be given the broader effect of permitting a negotiation of the note as against or in violation of the agreement that it would not be negotiated but would remain in the possession of the payee until the end of the contract period, that the defendant might have credit thereon for the purchase price of the goods then remaining on hand. Upon the defendant's evidence

as to the transaction the note was conditionally delivered. It represented the purchase price of the goods ordered, but was not to be a binding obligation except for the amount of the purchase price of the goods that were sold during the period of one year from the date of the contract, if the defendant should then insist upon a compliance by the Puritan Manufacturing Company with its agreement to buy back at the purchase price all the goods remaining on hand at that time.

Some contention is made with reference to the statements in the contract to the effect that the agent of the selling company is merely a soliciting salesman, and that the purchaser must see to it that all arrangements pertaining to the order are shown "hereon" as none others will be recognized. We understand the contention to be that the agreement that the note would not be negotiated not being shown by the written contract is not entitled to consideraion. There is nothing in the body of the contract stating or referring to the fact that the defendant had signed or was to sign a note for the price of the goods ordered. There was and is a paragraph in the printed form of contract under the heading of "Terms", reading as follows: "If a signed agreement for installment payments accompanies this order the amount of this order may be paid in six payments as follows: One-sixth in......months; one-sixth in......months; one-sixth in......months; one-sixth in......months; one-sixth in......months; one-sixth in......months. Otherwise terms are cash; 6 per cent if paid in 15 days; 90 days net." The blanks in this paragraph were left unfilled, and the terms were stated in writing to be "twelve months from date"; these quoted words being written in the contract immediately following the printed heading "Terms". We do not think the statement that all arrangements pertaining to the order must be shown on the contract necessarily applies or refers to the matter of detaching or negotiating the note given or to be given for the amount of the order. On the contrary it was entirely competent, in our opinion, for the defend-

ant to require as a condition for signing and delivering the note that it should be retained by the company until the purchase price of the goods ordered should become due, especially in view of the fact that, under the terms of the contract, the actual amount of the defendant's obligation would not be known until then. We think the trial court reached the proper conclusion upon the evidence, and the judgment will be affirmed. *Affirmed.*

BEARD, J., and SCOTT, J., concur.