CENTRAL BANK OF BINGHAM v. STEPHENS.

No. 3637.    Decided June 23, 1921.    (199 Pac. 1018.)

1.  WITNESSES—CROSS-EXAMINATION OF PLAINTIFF'S WITNESS NOT BEYOND PROPER BOUNDS. In a bank's action on a note assigned to it by its predecessor, cross-examination of plaintiff's witness, the cashier of the predecessor bank, that he wrote the note on his own initiative, that defendant signed it at his request for accommodation, etc., held not beyond proper bounds.[1]

2.  APPEAL AND ERROR—CROSS-EXAMINATION OF PLAINTIFF'S WITNESS NOT PREJUDICIAL. In a bank's action on a note assigned to it by its predecessor, cross-examination of plaintiff's witness, the cashier of the predecessor bank, eliciting testimony that he prepared the note himself, and that defendant had signed it at his request, if beyond proper bounds, held not prejudicial to plaintiff bank.

3.  EVIDENCE—TERMS OF WRITTEN INSTRUMENT MAY NOT BE VARIED BY PAROL, BUT FRAUD OR CONDITION MAY BE SHOWN. As between the parties thereto, the terms of a written instrument may not be varied in any particular by parol evidence, but if a written instrument is delivered on an express condition, and is not to be effective until the condition is fulfilled, the condition on which it was delivered, or, in case of fraud, etc., as between the parties and those having notice, may be shown by parol, such showing not varying the terms of the instrument.[2]

4.  BILLS AND NOTES—DELIVERY ON CONDITION MAKER SHOULD NOT BE HELD LIABLE THEREON A DEFENSE. It is a valid defense to the enforcement of a note against the maker by a party to whom

---

[1] *Anderson* v. *Railway*, 35 Utah, 509, 101 Pac. 579.

[2] *First National Bank* v. *Foote*, 12 Utah, 157, 42 Pac. 205; *Helper State Bank* v. *Jackson*, 48 Utah, 430, 160 Pac. 287; *Martineau* v. *Hanson*, 47 Utah, 549, 155 Pac. 432; *Smith* v. *Brown*, 50 Utah, 27, 165 Pac. 468.

it was delivered that the note was without consideration, and was delivered on condition the maker should not be held liable thereon.

5. BANKS AND BANKING—CASHIER IN FULL CONTROL COULD ACCEPT NOTE ON CONDITION MAKER SHOULD NOT BE HELD LIABLE. The cashier of a bank, clothed with more power than cashiers ordinarily have, being in active control of all the bank's business, exercising and possessing full power to act in all matters, could bind the bank by accepting a note executed by the maker to the bank on condition he should not be held liable thereon, and in suit by the bank's successor against the maker on such note, such agreement made by the predecessor bank's cashier constitutes a defense.

6. BILLS AND NOTES—BANK MUST TAKE NOTE TO PREDECESSOR AS AFFECTED BY CONDITIONAL AGREEMENT OF PREDECESSOR'S CASHIER. A bank suing on a note given by the maker to its predecessor bank under an agreement of its cashier that the note would not be used or enforced must take such note precisely as the cashier of the predecessor bank took it, that is, with the conditional agreement in force, and must do so or not take it at all.

Appeal from District Court, Third District, Salt Lake County; *Jno F. Tobin*, Judge.

Action by the Central Bank of Bingham against T. B. Stephens. From judgment for defendant, plaintiff appeals.

AFFIRMED.

*H. Van Dam, Jr.*, and *Noel S. Pratt*, both of Salt Lake City, for appellant.

*Straup, Nibley & Leatherwood*, of Salt Lake City, for respondent.

FRICK, J.

The plaintiff, hereinafter called appellant, brought this action in the district court of Salt Lake county to recover upon a promissory note. The note was dated December 7,

1917, and was payable on demand. This action was commenced on July 15, 1919. The note was made payable to the Citizens' State Bank, or order, which bank went into the hands of a receiver, and by the direction of the district court aforesaid the note was assigned to the appellant who succeeded to the banking business and the assets of said Citizens' State Bank. The note is in the usual form of a demand note, and the complaint contains the usual allegations in such cases.

The defendant admitted "that he signed the note," but averred:

"That the same was given to the Citizens' State Bank of Bingham, the payee named therein, as a mere matter of form, and without any consideration of any nature whatsoever."

The defendant, after denying the other allegations of the complaint, as affirmative defenses averred that the note was delivered upon condition; that it was signed without consideration; that it was used and diverted contrary to the agreement upon which it was signed and made, and that appellant was not a holder in due course, the particulars of each defense being fully stated. We shall state only so much of the evidence as may be necessary to a full understanding of the questions presented for decision.

At the trial the defendant admitted that the note had not been paid. Mr. Kelly, the cashier of the Citizens' State Bank, was called as a witness on behalf of appellant, and testified that the defendant signed the note; that after the note was signed "it was put in the account of loans and discounts, and credited to my personal account." On cross-examination the witness further testified that at the time the note was given he was the cashier of the Citizens' State Bank; that as such he had "entire control of the bank," and that no other official was over him; that he wrote the note upon his own initiative. The witness, over appellant's objection that it was not proper cross-examination, further testified that when the defendant came into the bank on the day the note bears date, "I said to Mr. Stephens, 'Tom, I want your note for two or three weeks,' and he said 'All right.'" The witness further said that he told the defendant at the

time that he would "return him his note in about 10 days."
The witness also said that when he asked the defendant to
sign the note he hesitated to do so.   The witness was then
asked the following questions and replied as indicated:

"Q.  Didn't you then, when he hesitated, when Mr. Stephens
hesitated, didn't you then say 'Tom, this is a matter of form; I'll
hold this for 8 or 10 days and hand it back to you?' Didn't you in
substance say that to him?' A.  Yes; very possibly.

"Q.  And didn't you say 'Tom, this note is not going to be
used for any purpose; I just want it for a few days, and I'll hand it
back to you?'  A.  I may have said something similar to that."

There is much more testimony of similar import which it
is not necesary to state here.   The defendant was called as a
witness in his own behalf.   He testified that prior to the
transaction of making the note he and Kelly were very close
friends; that they were members of the same lodge; that they
acted together on the committee to raise funds for the pur-
chase of Liberty Bonds, etc.   The witness further said:

"Mr. Kelly was mayor [of Bingham], president of the Commer-
cial Club, and in fact he was the head man of the town; practically
he was into everything in public affairs, a great man in public
affairs; public spirited fellow."

The defendant further testified that, while he and Kelly
were quite intimate, and had acted together in town and
other affairs, yet that he never had had any personal business
transactions with him; that he was a depositor in the bank
of which Kelly was cashier; that on the day in question he
went to the bank to make a deposit; that he had not spoken
to Kelly, nor the latter to the witness, with regard to the note
in question before Kelly asked him to sign it; that after mak-
ing the deposit he started to leave the bank when Mr. Kelly
called him back.   The defendant then, in referring to the
note in question, and to what was said between him and
Kelly, said:

"Mr. Kelly called me back there and showed me this [referring
to the note], which was already made out, and he asked me to
sign it.  *  *  *  He said 'This won't be considered an obligation
against you.'  He says 'It won't be negotiated; it won't leave the
bank, and it won't be used by either me or the bank and will be
handed back to you in a few days, not to exceed 10 days.' "

The witness also said that he hesitated to sign the note and did so after—

"Mr. Kelly gave me strictly to understand that the note would not be used by anybody, by the bank or by him, or never negotiated."

The defendant further said that Mr. Kelly had never said anything to him that he wanted him to sign the note to "enable him to raise money"; that the defendant never obtained any money or thing of value for signing the note; that he was not obligated to the bank; that no demand was ever made upon him by Kelly or the bank to pay the note, and that he never paid anything upon it, etc. There was also evidence from other sources that prior to the time that the bank went into the hands of a receiver Mr. Kelly in fact conducted the bank's entire business in his own way, and without being directed or controlled by any other officer, or by the board of directors of the bank, in any way. It was also conceded in the court below, and is conceded here, that all of the defenses are open to the defendant in this action that would have been open to him if the original payee of the note had sued upon it. There was also some evidence with respect to whether the bank parted with anything of value to Kelly. As to that the appellant contends that the evidence showed that Kelly had received credit on his personal account for the note, and hence the defense of want of consideration failed, while the defendant insists that at most the evidence and the inferences that may be deduced therefrom were such that it was a question for the jury, and, in view that it found the issues in favor of the defendant, that question is settled in his favor. We shall refer to this question hereinafter.

The court submitted the case to the jury upon the issues presented by the pleadings and the evidence produced by the respective parties. The jury returned a verdict in favor of the defendant, upon which judgment was duly entered, to reverse which this appeal is prosecuted.

Numerous errors are assigned. Counsel for appellant, in their brief, however, have condensed the assignments to a few propositions which we shall now proceed to consider.

The first proposition discussed by counsel arose as follows:

The appellant called Mr. Kelly as a witness, and, after he testified that he saw the defendant sign the note in question, he also testified that he had placed the note in the bank's account of loans and discounts, and that it was credited to his personal account. Defendant's counsel then took the witness, and, over the objections of appellant that it was not proper cross-examination, was permitted to examine him with respect to the whole transaction in signing the note, and what was said between the witness and defendant on that occasion. It is now urgently insisted that the district court erred in permitting the cross-examination. It is insisted that the cross-examination of the witness transcended the bounds of legitimate cross-examination.

In the case of *Anderson* v. *Railway*, 35 Utah, 509, 101 Pac. 579, this court undertook to state the limits of legitimate cross-examination so far as that may be done in a general statement. In referring to the general rule governing cross-examination, it is there said:

"This general rule is to the effect that the cross-examination should relate to the matters stated by the witness on direct examination, and to the facts and circumstances connected with or related to the matters stated by him. In other words, all matters that may modify, explain, contradict, rebut, or make clearer the facts testified to in chief by the witness may be gone into on cross-examination. Ordinarily, when this field has been covered by the cross-examiner, the right, as an abstract right, to further cross-examination ceases. Beyond this the matter of cross-examination necessarily, to a very large extent, at least, must be left to the sound discretion of the trial court."

The rule as laid down in that case is quoted with approval in 5 Jones, Comm. Ev. § 521. While it is true that the rule in the English courts is less restricted than in this country, and that some American courts follow the English rule, yet, in our judgment, the great weight of American authority sustains the rule laid down in *Anderson* v. *Railway*, supra, and such is the view of the author of Jones, Comm. Ev. 5 Jones, Comm. Ev. §§ 520, 521, where a great number of cases are collated.

The appellant contends, however, that practically all that was elicited from the witness Kelly was that the defendant

signed the note, and hence, according to the American authorities, the court permitted the cross-examination to be extended beyond proper bounds. In this contention we think the appellant is in error. It was not necessary to prove that the defendant signed the note. That fact was admitted in the answer. While it is true that the appellant did not go into the entire transaction, yet he opened it up to some extent, as appears from what we have quoted. It may well be, however, that under the peculiar circumstances of this case the district court permitted Kelly to be cross-examined beyond proper limits; yet, if that be conceded, still no prejudice could have resulted to the appellant. We have quoted practically the whole of the substance of the testimony of Kelly and the defendant, respecting the transaction, and a mere cursory examination of that testimony will disclose that there is no substantial conflict between the two witnesses. If, therefore, both Kelly and the defendant agree upon the facts and circumstances respecting the transaction, the appellant could not have been prejudiced. Suppose the defendant had made Kelly his own witness, as appellant contends he should have done, and had elicited from him the facts precisely as Kelly stated them on cross-examination; would, then, the substance of the evidence and the result have been changed? Where, as here, the witness of one party admits the facts as claimed by the adversary, although he does so on cross-examination which may have exceeded proper bounds, yet no legal prejudice can result to the party whose witness has been so cross-examined. In any view that we may take, therefore, the appellant suffered no legal prejudice, and hence this assignment cannot prevail.

It is next contended by appellant with much force and vigor that the court erred in permitting the defendant to testify to all of the facts and circumstances and to all that was said and done at the time the note was signed, for the reason that the effect of such testimony was and is to vary the terms of a written instrument by parol evidence. In support of this contention, appellant cites and relies upon the following cases: *First National Bank* v. *Foote,* 12 Utah, 157,

42 Pac. 205; *Helper State Bank* v. *Jackson*, 48 Utah, 430, 160 Pac. 287; *Wood* v. *Surrels*, 89 Ill. 107; *Cummings* v. *Kent*, 44 Ohio St. 92, 4 N. E. 710, 58 Am. Rep. 796; *Wright* v. *Remington*, 41 N. J. Law, 48, 32 Am. Rep. 180; *State Bank* v. *Forsyth*, 41 Mont. 249, 108 Pac. 914, 28 L. R. A. (N. S.) 501; *Davis* v. *Randall*, 115 Mass. 547, 15 Am. Rep. 146; *Skagit State Bank* v. *Moody*, 86 Wash. 286, 150 Pac. 425, L. R. A. 1916A, 1215; *German-American State Bank* v. *Watson*, 99 Kan. 686, 163 Pac. 637; *Indian Head Natl. Bank* v. *Clark*, 166 Mass. 27, 43 N. E. 912; and *Taylor* v. *Commercial Bank*, 174 N. Y. 181, 66 N. E. 726, 62 L. R. A. 783, 95 Am. St. Rep. 564. It is elementary that, as between the parties thereto, the terms of a written instrument may not be varied in any material part by parol evidence. It is, however, equally elementary that there are well-recognized exceptions to the rule, which are to the effect that, if a written instrument is delivered upon an express condition, and is not to be effective until the condition is fulfilled, the condition upon which it was delivered, or in case of fraud, etc., as between the parties, and as to those having notice thereof, may be shown by parol, and the effect of merely doing that is not to vary the terms of the written instrument. To that effect are numerous cases, some of which the defendant cited and relies upon, among which are the following: *Martineau* v. *Hanson*, 47 Utah, 549, 155 Pac. 432; *Smith* v. *Brown*, 50 Utah, 27, 165 Pac. 468; *Higgins* v. *Ridgway*, 153 N. Y. 130, 47 N. E. 32; *Holdsworth* v. *Blyth & Fargo Co.*, 23 Wyo. 52, 146 Pac. 603; *McNight* v. *Parsons*, 136 Iowa, 390, 113 N. W. 858, 22 L. R. A. (N. S.) 718, 125 Am. St. Rep. 265, 15 Ann. Cas. 665; *Le Duc* v. *Moore*, 111 N. C. 516, 15 S. E. 888; *Beach* v. *Nevins*, 162 Fed. 129, 89 C. C. A. 129, 18 L. R. A. (N. S.) 288; *Gamble* v. *Riley*, 39 Okl. 363, 135 Pac. 390; *Paulson* v. *Boyd*, 137 Wis. 241, 118 N. W. 841; *National Bank* v. *Stroup*, 104 Kan. 11, 177 Pac. 836; *Brown* v. *Smedley*, 136 Mich. 65, 98 N. W. 856; *Brick* v. *Brick*, 98 U. S. 514, 25 L. Ed. 256; *Peterson* v. *Tillinghast*, 192 Fed. 287, 112 C. C. A. 545.

The foregoing authorities illustrate a great variety of circumstances under which it was held that parol evidence may

be introduced in support of the defense urged by the defendant in the case at bar. In many of these cases the action was prosecuted by receivers. In *Beach* v. *Nevins,* supra, the court said:

"We think, however, the evidence tending to show a contemporaneous understanding and agreement, upon which the note was executed and delivered, was properly admitted for the consideration of the jury, and that they were properly instructed by the court below that, if this evidence proved to their satisfaction that the making and delivery of the note was conditional, and that the condition had not been performed, the defendant was entitled to a verdict. To so hold does not contravene the general rule against contradicting or varying of the terms of a written contract by parol testimony. What was the intent of the parties as to the written contract becoming operative, may in such a case be inquired into, and evidence considered tending to show that in accordance with that intent it never did become operative; that its obligation was nonexistent."

In *Gamble* v. *Riley,* supra, the decision is reflected in the second headnote, which is in the following words:

"It is elementary that parol evidence is inadmissible to contradict or vary the terms of a valid written instrument. But the rule is almost equally well settled that parol evidence may be given to prove the existence of any separate parol agreement constituting a condition precedent to the attaching of any obligation under the written instrument; this is not to vary the terms of a written instrument, but to prove that no contract was ever made; that its obligation never commenced."

In *Brick* v. *Brick,* supra, the rule is stated in the headnote which reads:

"The rule which excludes such evidence to contradict or vary a written instrument does not forbid an inquiry into the object of the parties in executing and receiving it."

The facts in the case of *Peterson* v. *Tillinghast,* supra, were very much like those in the case at bar. In the course of the opinion the court said:

"Peterson testified that the cashier of the bank asked him if he would sign a note for the bank for $5,000, to which Peterson replied that he did not think his note for that amount would look well in the bank, because he had some paper there already. The cashier then stated 'that he did not propose to have it in the bank;' indeed, that he did not know whether he would use the note at all, but

that, if he did, he would use it 'for the purpose of raising money
from some outside bank.' Peterson told him that he 'might sign a
note for half that amount to accommodate them, if he thought that
that would do them any good'; and, further, that the cashier told
him that, if he gave a note, he 'should never have to pay, because
that would be taken care of by the bank.' Peterson testified, also,
that he had known the bank since 1890, that he had several de-
posits there, and that 'the reputation of the bank for solvency and
prosperity was first class;' also, that the president and cashier 'were
considered among our best men, and were considered wealthy.'"

In the foregoing case the Circuit Court of Appeals re-
versed the judgment of the lower court, for the reason that
the lower court held that Peterson could not avail himself of
the facts testified to by him.

In 22 C. J. 1153, after stating the general rule that parol
evidence is inadmissible to vary the terms of a written in-
strument, it is said:

"But it may be shown, as between the parties or others having
notice, that the delivery was conditional only, and that the instru-
ment never in fact came into force as a binding obligation."

In support of the foregoing text cases are cited from 28
states, and also from the federal courts, as well as from the
courts of England and Canada. Among the cases cited are
the two from this court to which we have referred. Moreover,
in *State Bank* v. *Forsyth,* 41 Mont. 249, 108 Pac. 914, 28 L.
R. A. (N. S.) 501, cited by appellant, while recovery was
permitted against the maker of the note in that case, yet the
court recognized the rule here contended for. It is there
said:

"It is a valid defense to the enforcement of a note against the
maker, by the party to whom it was delivered, that the note was
without consideration, and was delivered on condition that the
maker should not be held liable thereon."

A mere cursory reading of the cases cited by appellant will
disclose that, while those cases are correctly decided upon the
facts and circumstances there controlling, they never-
theless have no application to the facts and circum-          4
stances of the case at bar. Where the facts and cir-
cumstances are as in the case at bar, then the law as quoted
from the cases last above cited controls.

Appellant insists, however, that Mr. Kelly, as the cashier of the Citizens' State Bank, did not possess the authority to bind the bank by the agreement he entered into with the defendant. Let it be assumed that a cashier in taking paper for the bank ordinarily does not have the authority, as such officer, to bind the bank by such an agreement. In view of the undisputed evidence in this case, however, Kelly was clothed with more power than cashiers ordinarily are clothed with. He conducted all of the bank's business affairs. He was the man possessing full power to act in all business matters, and thus could bind the bank. The case at bar, in that respect, falls squarely within the rule stated in the case of *First National Bank of Blaine* v. *Blake* (C. C.) 60 Fed. 78, and in *Le Duc* v. *Moore,* supra. The directors of a bank may not confer upon its cashier plenary power to conduct the bank's business affairs, and when he does some act which is inimical to the bank's interest repudiate that act while accepting and approving other acts. Nor is this a case where the cashier acted for himself, and where his interests conflicted with the interests of the bank. Here Kelly was in no way related to the note. The note was payable to the bank, and not to Kelly. He took it for the bank, and hence must be deemed to have acted for it in the transaction.

If it be assumed, however, that Kelly, in taking the note and in entering into the agreement with the defendant, acted for himself alone, and was without authority to bind the bank as contended for by appellant, then what follows? The appellant, in seeking to recover upon the note against defendant, necessarily stands in the shoes of the Citizens' State Bank. All defenses that could successfully be made against the Citizens' State Bank can as successfully be made against appellant. If, therefore, the Citizens' State Bank were here suing it could not in one breath be heard to say that Kelly is without authority to bind it as his agent and in the next breath insist that it, nevertheless, can avail itself of his act in taking the note. It could not avail itself of only so much of the transaction as was beneficial to it and repudiate all the rest. If it relies upon the note it must take it

precisely as Kelly took it, namely, with the conditional agreement under which it was taken. It must either do that or not take it at all. The law is well settled that, in case a principal seeks to recover upon a contract in which the agent exceeded his authority, he must take the contract as a whole. In 1 Mechem, Agency, § 448, it is said:

"An action to enforce notes taken by an assumed agent ratifies his act in taking them, and opens the door to a defense based upon his misrepresentations in obtaining them, or charges the principal with knowledge which the agent possessed concerning their consideration."

The author, in the same volume, in section 446, in speaking upon the same subject, says:

"Here, as elsewhere, the principal must have knowledge of the facts, but it suffices for this purpose that he has such knowledge at any time before he demands judgment of performance. A disclosure of the facts by the other party's pleadings or evidence may, it is held, be enough, if sufficiently definite and certain, to put him to an election either to repudiate or ratify.

"Here, as elsewhere, also, if he ratifies, he must ratify in toto— he must take the burdens with the benefits—and, by demanding performance to himself, he assumes responsibility for the instrumentalities—the frauds, misrepresentations, promises, and conditions—through which the act was induced, so far as they affect the enforceability of the contract upon which his action is founded."

In view, therefore, that the appellant stands in the shoes of the Citizens' State Bank in seeking to recover against the defendant upon the note in question, there is no escape from the conclusion that the defenses which the defendant interposed, if established, necessarily defeat the right of recovery. See *National Bank* v. *Whitney*, 40 Cal. App. 276, 180 Pac. 845.

Nor is the assignment that the court erred in its charge to the jury tenable. That assignment is predicated upon the theory that the bank was not bound by the agreement which Kelly made with the defendant when the note was signed. We have already shown that such is not the case, and hence the court's charge is not vulnerable to the objection urged against it.

Nor is there any merit to the contention that the court erred in submitting the question to the jury whether the

Citizens' State Bank paid any consideration for the note. While it is true that Kelly testified that he received credit for the note, yet there is also evidence, and inferences deducible therefrom, to the contrary. At all events, there was sufficient conflict upon that question to take it to the jury.

After a careful examination of the record in this case, and the law applicable to the facts and circumstances as they are disclosed by the record, we can see no alternative save to affirm the judgment. Such is the order. Costs to the respondent.

CORFMAN, C. J., and WEBER, GIDEON and THURMAN, JJ., concur.