## MILLER v. WHITE et al.

No. 4530.　Decided June 13, 1927.　(258 P. 565.)

*Fisher Harris* and *Walton, Walton & Nelson,* all of Salt Lake City, for appellant.

*Irvine, Skeen & Thurman,* of Salt Lake City, for respondents.

HANSEN, J.

The plaintiff brought this action to recover judgment against the defendants on a negotiable promissory note. The note is dated March 21, 1925, and is for the sum of $1,000, made payable to the order of "myself or ourselves." The makers also agreed to pay reasonable expenses of collection including attorney's fee. The defendants Mohonri M. White and Mary Dott White signed the note as makers thereof, and they are also blank indorsers. Defendants C. A. Quigley and E. J. Welch are also blank indorsers of the note.

The complaint is in the usual form. Defendants Mohonri M. White and Mary Dott White answered. In their answer they admit that they executed the note sued upon. They also admit that they delivered the note to the defendant E. J. Welch, but allege that before the note was issued and delivered to said defendant E. J. Welch they informed him "that they would not be able to pay the amount set forth in said note, or any part thereof, either principal or interest,

at the time of its maturity, or at all; that thereupon the defendant E. J. Welch told these defendants (in the presence and hearing of plaintiff) that said note would be used by him solely for the purpose of obtaining temporary credit, and that these defendants would never be called upon to pay said note, or any part thereof, either principal or interest, and that before the maturity of said note, the same would be paid by the defendants E. J. Welch and C. A. Quigley, and returned to these defendants; that these defendants believed and relied upon said statements, representations, promises, and agreements, and in reliance thereon, and not otherwise, executed and indorsed said note and delivered the same to the defendant E. J. Welch, subject, however, to the condition that these defendants would not be required to pay the same, or any part thereof, either principal or interest; that plaintiff, before taking said note, knew the consideration for the same, and the conditions under which it was obtained, and which were attached to its delivery, as hereinbefore specified and set forth, or knew of such facts that it was his duty, acting in good faith, to make inquiry concerning the same." The defendants in their answer also admitted that they have paid no part of said note. They denied that the note was indorsed and delivered before maturity to the plaintiff herein by C. A. Quigley and E. J. Welch, and also deny that the plaintiff is the owner and holder of the note.

A trial was had to a jury, and a verdict rendered in favor of the defendants and against the plaintiff, no cause of action. Motion for new trial was made by plaintiff and denied. The plaintiff appeals. The defendants Quigley and Welch took no part in the trial of the case; neither do they appear in this court on this appeal.

After the jury was impaneled, and respective counsel had made their opening statements, and the note in question was introduced in evidence, and counsel had stipulated that, in the event plaintiff should recover on the note, the sum of $100 should be allowed plaintiff's attorney as a fee for the

prosecution of this action, the attorney for plaintiff moved for judgment on the pleadings. On this appeal the plaintiff assigns as error the refusal of the court to grant this motion.

In appellant's brief it is urged that the facts alleged in the defendants' answers concerning the circumstances under which the plaintiff took the note do not constitute a defense.

We shall again consider this phase of the case in connection with defendants' evidence. We do not ■ deem it necessary to discuss the question of whether or not the motion for judgment on the pleadings was or was not timely interposed. The complaint alleges and the answer denies that the note in question was indorsed and delivered by E. J. Welch and C. A. Quigley before maturity, for value, and in due course to the plaintiff, and that the plaintiff is now the owner and holder of the note. The pleadings having raised these issues, the same must of necessity be determined by the evidence. The trial court therefore properly denied plaintiff's motion for judgment on the pleadings.

At the conclusion of the evidence counsel for the plaintiff interposed a motion for a directed verdict in favor of the plaintiff and against the defendants for the amount of the principal and interest owing upon the note and for an attorney's fee in the stipulation sum of ■ $100. The court denied the motion and appellant assigns this ruling as error. In considering this assignment of error it becomes necessary to review the evidence in the light most favorable to the defendants.

The defendant Mohonri M. White testified in substance that he is 46 years of age, a mail carrier by occupation, but has been a farmer during the greater part of his life; that the defendant E. J. Welch solicited him to become a purchaser of the stock of the Pahvant Coal Company; that Welch informed him that, if he would lend his credit for a few days for the sum of $1,000 the defendants Welch and Quigley would give him (White) $1,000 par value of stock

in the Pahvant Coal Company; that on the first visit White rejected the proposition, but upon the second visit he accepted their offer; that he signed a property statement showing his net assets to be $25,650, and also signed the following agreement:

"Salt Lake City, Utah, March 21, 1925.

"I, the undersigned, have this day loaned to Quigley & Welch one thousand dollars, and it is understood and agreed that for and in consideration of this loan I am to have issued to me one share of stock of the Pahvant Coal Company, par value one dollar per share, as a bonus for each dollar loaned.

"Said Quigley & Welch also agree that this subscription carries with it the right to buy coal from them at wholesale prices as long as I am a stockholder in the Pahvant Coal Company. Coal deliveries will be made as soon as Pahvant Coal Company's mine is in operation. In the meantime coal deliveries will be made at the lowest possible price attained by Quigley & Welch. It is also understood and agreed that the amount of this loan is to be repaid to me by said Quigley & Welch on or before one year from date.

"By Mohonri M. White, subscriber. Quigley & Welch, 301-2-3, Clift Building, Salt Lake City, Utah, by Jos. S. Welch, Agent."

The witness testified that at the same time he also signed the following:

"Salt Lake City, Utah, March 21, 1925.

"To Whom It may Concern:

"This is to certify that I, the undersigned stockholder of the Pahvant Coal Company, a Utah corporation, advanced money and credit to E. J. Welch and C. A. Quigley for the defrayal of expenses incurred by them in placing the property of said company in production.

"We know that said company owned 280 acres of coal property in Carbon County, Utah, and that said property was near a railway, and that it would take money and credit to place it in working condition, and we fully expected that it would require further financing.

"No representations were made to me by any person in any respect connected with said company, which have not been complied with, and which I was not fully familiar.

"[Signed] Mohonri M. White, Stockholder.

"April 7, 1925.

"Rec'd of Quigley Welch certificate No. 552 for one thousand shares of Pahvant Coal Company stock in settlement of above agreement.

"[Signed] Mohonri M. White."

The defendant, White, further testified:

That these written instruments constitute the agreement as he understood it to be; that he did not lend Quigley & Welch $1,000, but that he did lend them his credit; that he understood that Quigley & Welch would pay the note and return it to him within 60 days, but that in the meantime Quigley & Welch could do as they pleased with the note; that the note involved in this action may have been signed on the same day as the other instruments were signed; that the defendant Welch and his son and the plaintiff again called on White to secure his indorsement on the note; that before indorsing the note he said to Welch:

Look here, Mr. Welch, I'll not sign that note if it is going to involve me in any way in one cent of money. I would shoot a man that would rob me or my family out of thousand dollars, and if you have the least idea of these bonds failing to go through, and it is causing me any trouble, I propose to let the matter drop right here."

That Mr. Welch replied:

"You don't need to worry, Mr. White; it will not cost you a cent, and this note will be returned to you in 60 days."

That this conversation took place and was had in the presence of the plaintiff; that plaintiff said, "Mr. White, do you want me to buy this note?" to which Mr. White replied, "You may do so under the conditions specified by Mr. Welch that it will not cost me a cent and the note will be returned in 60 days;" that he (White) was not sure that he did not tell the plaintiff that he would pay the note.

White received the stock certificate for $1,000 par value of capital stock in the Pahvant Coal Company and still retains the same. He further testified that plaintiff told him that he (the plaintiff) would not buy the note unless White's wife signed it; that after this conversation was had White indorsed the note and wrote on a slip of paper a request for his wife to sign the note; that thereupon Welch, accompanied by the plaintiff and Welch's son, took the note

and left to secure the signature and indorsement of the defendant Mary Dott White.

The defendant Mary Dott White testified in substance:

That she is the wife of the defendant Mohonri M. White; that the defendant E. J. Welch came to her home with the note in question, and also a writing from her husband, informing her that it would be all right for her to sign the note; that she then informed Welch that she would not sign the note if she had to pay any money, because she and her husband could not do so, as they were paying all they could on their home; that Welch replied:

"Don't worry one minute about it, you don't have to pay any money, it is just your credit that we are borrowing, this note is going to be returned to you, we will take care of that."

That upon this assurance she signed the note; that she and defendant, E. J. Welch, then went out to the car, where the plaintiff and the son of E. J. Welch were; that while at the car and in the hearing of the plaintiff she asked Welch what was to be done with the note, and Welch said it would be sent to California to show people there that the stockholders of the Pahvant Coal Company had a good credit; that Mrs. White said, "Are you sure that I won't have to pay any money?" and Mr. Welch replied, "You won't have to pay a cent; we are going to return this note to you within two months, maybe sooner, if we can get the bonds sold;" that by bonds she thought he referred to bonds relative to the Pahvant Coal Company; that Mr. Welch then told her that she would have to indorse the note; that she took the note and saw that Mr. White had indorsed it; that she knew that when it was indorsed "it was a dangerous article," and she said, "If I have to pay this note I will lose my home;" and that Mr. Welch replied, "Mrs. White, don't worry about that; you won't have to pay a cent;" and she said, "Well, you will find out if I have to pay this note, you are going to get into trouble;" and Welch replied, "You

don't look like a dangerous woman." She further testified that Welch had informed her that the note was to be used to help sell some bonds, and that she knew her husband was to get some consideration for the note; that after the conversation was concluded she indorsed the note; that plaintiff did not say anything, except to acknowledge an introduction.

Two other witnesses were called by the defendants, who corroborated part of the testimony of Mrs. White.

The plaintiff and the son of E. J. Welch gave an entirely different version of the conversation had by E. J. Welch with the defendants Mr. and Mrs. White at the time the plaintiff was present; but we are not called upon to consider this evidence in determining the question now under consideration. Both Mr. and Mrs. White testified that they relied upon the statements of Mr. Welch and would not have signed or indorsed the note, had it not been for such statements. The undisputed evidence shows that the plaintiff purchased the note before maturity for the sum of $900, and that he was the owner and holder of the note at the time of the trial.

It is urged by counsel for the appellant that under the pleadings and facts, as viewed most favorably for the defendants, the most that can be said is that respondents were accommodation makers and indorsers, and that therefore the court below erred in submitting the case to the jury. Counsel for respondents contend that the pleadings and evidence are sufficient to support a finding that the delivery of the note to Welch was conditional, and for a limited purpose and duration only, and that plaintiff had knowledge of the condition. Counsel for respondents cite and rely upon the cases of *Garfield National Bank* v. *Colwell*, 57 Hun, 169, 10 N. Y. S. 864; *Gramercy Finance Corp.* v. *Greenberg,* 127 Misc. Rep. 897, 217 N. Y. S. 224; *Central Bank of Bingham* v. *Stephens*, 58 Utah 358, 119 P. 1018.

In the case of *Garfield Nat. Bank* v. *Colwell,* supra, it appears that the plaintiff knew that it was the understanding

of the defendant that he should not under any circumstances be liable upon the note; that the plaintiff, knowing of such an agreement between the original parties to the instrument, could not enforce the payment of the note. In the *Gramercy Finance Corp.* v. *Greenberg* Case, supra, the action was brought against the defendants as the makers of the promissory note. The complaint sets forth the necessary allegations of the execution and delivery of the note, demand for payment, and nonpayment thereof. The answer of the defendant Kolber denies the making of the note, and as a separate and distinct defense alleges that the note sued upon was executed by him without consideration, solely for an accommodation of the defendant Harry Greenberg, and that plaintiff took said note with the understanding that defendant Kolber should not be liable therefor, and the court held that judgment on the pleadings should not have been granted, because of the agreement alleged as having been with the plaintiff. In the case of *Central Bank of Bingham* v. *Stephens,* supra, the defendant Stephens executed and delivered the note to the bank without consideration, and on condition that the maker should not be held liable thereon.

We are of the opinion that none of these cases supports the contention here made by respondents. In each of the cases cited it is made to appear that the instrument was delivered with the understanding and agreement that it should in no way have any binding force or effect upon the defendant, and that the plaintiff had agreed that the defendant should not be liable thereon. In the case at bar, both of the defendants testified in substance that the note was given for the purpose of lending their credit for assisting in financing the corporation in which Mohonri M. White was to receive and did receive $1,000 par value of the capital stock. Quigley & Welch were in no way restricted under the agreement in negotiating the note. In fact it seems clear that the only way effect can be given to the language used and the purposes to be accomplished, as testified to by the respondents, was that the note should be used as it was used

for the purpose of securing money to temporarily finance the corporation. If the note was without any legal effect whatsover, it is difficult to see how it could assist in the accomplishment of its purpose.

Concededly the respondents were lending their credit, which expression is meaningless, unless the note was to have some binding effect upon the respondents. Both of the respondents seem to have clearly understood that they were assuming a legal obligation when they executed, indorsed, and delivered the note, because they repeatedly insisted that defendant E. J. Welch should undertake and agree to protect them against this liability. The evidence in this case does not show nor tend to show a conditional delivery, as that term is generally used. In the case of a conditional delivery the instrument is not to take effect until the condition is performed. Brannan's Neg. Instru. Law (4th Ed.) § 16, p. 135. Here there is no condition that was to be performed before the instrument was to take effect. Comp. Laws Utah 1917, § 4058, provides:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

In 8 C. J. p. 252, we have the following definition of an accommodation paper:

"An accomodation paper is a bill or note to which the acceptor, drawer, maker, or indorser, as the case may be, has put his name without consideration, for the purpose of accommodating by a loan of his credit some other person who is to provide for the bill or note when it falls due."

It will be seen that, when the respondents signed their names as makers and indorsers to the note in question, for the purpose of lending their credit, they became accommo-

dation parties to the instrument, and as such are liable on the note in the hands of the plaintiff who purchased the note. While the person accommodated cannot, of course, recover from the accommodating parties on a negotiable instrument, the purchaser of accommodation paper may recover when the only defense is, as here, that the accommodated party to the instrument agreed to pay the same. Of course, if the purchaser agreed with the accommodating parties to the instrument that they would not be held, as in the case of *Gramercy Finance Corp.* v. *Greenberg,* supra, the circumstances would be quite different. But here there is neither any pleading nor evidence to justify a conclusion that the appellant here entered into any such an agreement with the respondents herein.

In the case of *Miller* v. *Stuart,* 253 P. 900 (decided by this court at last term), the facts are quite similar to the facts in this case. It is there held that a directed verdict in favor of the plaintiff was proper. A list of cases is there cited in support of the conclusions reached, and we shall not again cite them herein.

We are of the opinion that the pleadings and evidence of respondents in this action show that the respondents are in the position of accommodation makers and indorsers of the note sued on, and that the plaintiff was entitled to a directed verdict for the amount owing upon the note, together with the stipulated sum of $100 attorney's fee.

It follows that the judgment in this case should be, and the same is hereby, reversed, and the cause is remanded to the district court of Salt Lake county, with directions to grant a new trial. Appellant to recover costs.

GIDEON, CHERRY, and STRAUP, JJ., and WIGHT, District Judge, concur.

THURMAN, C. J., being disqualified, did not participate herein.